### THE UNITED STATES v. GEORGE WILSON.

The defendant was indicted for robbing the mail of the United States, and putting the life of the driver in jeopardy, and the conviction and judgment pronounced upon it extended to both offences. After this judgment no prosecution could be maintained for the same offence, or for any part of it, provided the former conviction was pleaded.

The power of pardon in criminal cases had been exercised from time immemorial by the executive of that nation whose language is our language; and to whose judicial institutions, ours bear a close resemblance. We adopt their principles respecting the operation and effect of a pardon; and look into their books for the rules prescribing the manner in which it is to be used by the person who would avail himself of it. A pardon is an act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. It is the private, though official act of the executive magistrate, delivered to the individual for whose benefit it is intended, and not communicated officially to the court.

It is a constituent part of the judicial system, that the judge sees only with judicial eyes, and knows nothing respecting any particular case of which he is not informed judicially. A private deed, not communicated to him, whatever may be its character, whether a pardon or release, is totally unknown, and cannot be acted upon. The looseness which would be introduced into judicial proceedings would prove fatal to the great principles of justice, if the judge might notice and act upon facts not brought regularly into the cause. Such a proceeding, in ordinary cases, would subvert the best established principles, and would overturn those rules which have been settled by the wisdom of ages.

There is nothing peculiar in a pardon which ought to distinguish it in this respect from other facts: no legal principle known to the court will sustain such a distinction. A pardon is a deed, to the validity of which delivery is essential; and delivery is not complete without acceptance. It may then be rejected by the person to whom it is tendered; and if it be rejected, we have discovered no power in a court to force it on him.

It may be supposed that no being condemned to death would reject a pardon, but the rule must be the same in capital cases and in misdemeanours. A pardon may be conditional, and the condition may be more objectionable than the punishment inflicted by the judgment.

The pardon may possibly apply to a different person or a different crime. It may be absolute or conditional. It may be controverted by the prosecutor, and must be expounded by the court. These circumstances

[United States v. Wilson.]

combine to show that this, like any other deed, ought to be brought "judicially before the court, by plea, motion or otherwise."

The reason why a court must, ex officio, take notice of a pardon by act of parliament, is, that it is considered as a public law, having the same effect on the case as if the general law punishing the offence had been repealed or annulled.

THIS case came before the court on a certificate of division of opinion from the judges of the circuit court of the United States for the eastern district of Pennsylvania.

At the April-sessions 1830 of that court, six indictments were presented to and found by the grand jury against James Porter and George Wilson: one for obstructing the mail of the United States from Philadelphia to Kimberton on the 26th day of November 1829; one for obstructing the mail from Philadelphia to Reading on the 6th day of December 1829; one for the robbery of the Kimberton mail, and putting the life of the carrier in jeopardy, on the same day in November 1829; one for robbery of the Reading mail, and putting the life of the carrier in jeopardy, on the same 6th day of December 1829; one for robbery of the Kimberton mail also on the 26th of November 1829; and one for robbery of the Reading mail also on the 6th of December 1829. At the same sessions two other indictments were presented to the grand jury against the same defendants, in which they were severally charged with robbery of the Reading and Kimberton mail, and wounding the carrier, which were returned to the court as "true bills, except as to wounding the carrier." Upon the indictment for robbery of the Kimberton mail, and putting the life of the carrier in jeopardy, and also in the two last mentioned indictments, a nolle prosequi was afterwards entered by the district attorney of the United States. On the 26th day of April 1830 the defendants James Porter and George Wilson pleaded not guilty to the several bills upon which they were arraigned: and on the 1st of May a verdict of guilty was rendered against them upon the indictment for robbery of the Reading mail, and putting the life of the carrier in jeopardy.

The circuit court, on the 27th of May 1830, sentenced the defendants to suffer death on the 2d July following; and James Porter was executed in pursuance of this sentence.

Upon the 27th of May 1830 George Wilson withdrew the

[United States v. Wilson.]

pleas of *not guilty* in all the indictments against him, except those on which a nolle prosequi was afterwards entered, and pleaded *guilty* to the same.

The indictment for robbery of the Reading mail, and putting the life of the driver in jeopardy, upon which James Porter and George Wilson were tried and convicted, was in the following terms :

"Eastern district of Pennsylvania, to wit:

"The grand inquest of the United States of America inquiring for the eastern district of Pennsylvania, upon their oaths and affirmations, respectively do present, that James Porter, otherwise called James May, late of the eastern district aforesaid, yeoman, and George Wilson, late of the eastern district aforesaid, yeoman, on the 6th day of December in the year of our Lord one thousand eight hundred and twenty-nine, at the eastern district aforesaid, and within the jurisdiction of this court, with force and arms in and upon one Samuel M'Crea, in the peace of God and of the United States of America then and there being, and then and there being a carrier of the mail of the United States, and then and there entrusted therewith, and then and there proceeding with the said mail from the city of Philadelphia to the borough of Reading, feloniously did make an assault, and him the said Samuel M'Crea in bodily fear and danger then and there feloniously did put, and the said mail of the United States from him the said Samuel M'Crea then and there, feloniously, violently and against his will, did steal, take and carry away, contrary to the form of the act of congress in such case made and provided, and against the peace and dignity of the United States of America.

"And the inquest aforesaid, upon their oaths and affirmations aforesaid, do further present, that the said James Porter, otherwise called James May, and the said George Wilson, afterwards, to wit, on the same day and year aforesaid, at the eastern district aforesaid and within the jurisdiction of this court, with force and arms in and upon the said Samuel M'Crea, then and there being a carrier of the mail of the United States, and then and there entrusted therewith, feloniously did make an assault, and him the said carrier of the said mail then and there feloniously, violently, and against his will, did rob, contrary to the form of the act of congress in such case

[United States v. Wilson.]

made and provided, and against the peace and dignity of the United States of America."

On the 14th of June 1830 the president of the United States granted the following pardon to George Wilson:

"Andrew Jackson, president of the United States, to all who shall see these presents, greeting:

"Whereas a certain George Wilson has been convicted before the circuit court of the United States for the eastern district of Pennsylvania, of the crime of robbing the mail of the United States, and has been sentenced by the said court to suffer the penalty of death on the 2d day of July next; and whereas the said George Wilson has been recommended as a fit subject for the exercise of executive clemency by a numerous and respectable body of petitioners, praying for him a remission of the sentence of death, inasmuch as, in such a case, sentence of imprisonment for twenty years may yet be pronounced against him on the indictments to which he has pleaded guilty in the circuit court of the United States for the said district, and a still more severe imprisonment may be awarded him for the same acts, in the criminal courts of Pennsylvania:

"Now therefore, I, Andrew Jackson, president of the United States of America, in consideration of the premises, divers other good and sufficient reasons me thereunto moving, have pardoned, and do hereby pardon the said George Wilson the crime for which he has been sentenced to suffer death, remitting the penalty aforesaid, with this express stipulation, that this pardon shall not extend to any judgment which may be had or obtained against him, in any other case or cases now pending before said court for other offentes wherewith he may stand charged.

"[L. S.]  In testimony whereof, I have hereunto set my hand and caused the seal of the United States to be affixed to these presents.  Given at the city of Washington this 14th day of June, A.D. 1830, and of the independence of the United States the fifty-fourth.

"ANDREW JACKSON.

"By the President,

"M. VAN BUREN, *Secretary of state.*"

[United States v. Wilson.]

The record, as certified from the circuit court, proceeds to state :

"And now, to wit, this 20th day of October, A.D. 1830, the district attorney of the United States moves the court for sentence upon the defendant, George Wilson : but the court suggesting the propriety of inquiring as to the effect of a certain pardon, understood to have been granted by the president of the United States to the defendant since the conviction on this indictment, although alleged to relate to a conviction on another indictment, the case postponed till the 21st day of October 1830.

"And now, to wit, this 21st day of October 1830, the counsel for the defendant, George Wilson, appear before the court, and on behalf of the said defendant, waive and decline any advantage or protection which might be supposed to arise from the pardon referred to : and thereupon the following questions or points were argued by the district attorney of the United States, upon which the opinions of the judges of the said circuit court were opposed :

"1. That the pardon referred to (prout the same) is expressly restricted to the sentence of death passed upon the defendant under another conviction, and as expressly reserves from its operation the conviction now before the court.

"2. That the prisoner can, under this conviction, derive no advantage from the pardon, without bringing the same judicially before the court by plea, motion or otherwise.

"And now, to wit, this 21st day of October 1830, the defendant, George Wilson, being in person before the court, was asked by the court whether he had any thing to say why sentence should not be pronounced for the crime whereof he stands convicted in this particular case, and whether he wished in any manner to avail himself of the pardon referred to : and the said defendant answered in person, that he had nothing to say, and that he did not wish in any manner to avail himself, in order to avoid sentence in this particular case, of the pardon referred to.

"And the said judges being so opposed in opinion upon the points or questions above stated, the same were then and there, at the request of the district attorney of the United States,

stated under the direction of the judges, and ordered by the court to be certified under the seal of the court to the supreme court, at their next session thereafter, to be finally decided by the said supreme court. And the court being further of opinion that other proceedings could not be had in the said case without prejudice to its merits, did order the same to be continued over to the next sessions of the court.

"HENRY BALDWIN. .
"JOS. HOPKINSON."

The case was argued for the United States, by Mr Taney, attorney-general; no counsel appeared for the defendant, George Wilson.

The attorney-general contended, that the other indictments against the defendant, and the proceedings on them, formed no part of the proceedings or evidence in this case; and they are not offered in evidence either by the United States or George Wilson. This court could judicially notice, perhaps, that such indictments were upon the records of the circuit court. But whether it was the same Wilson, or the act constituting the offence the *same act;* and whether it was pardoned; were matters of fact, and not matters of law. Neither one of these facts was pleaded by either of the parties, nor in any form alleged, nor any evidence offered to establish either of them.

The question is, can the court, without the allegation of either party, and without evidence offered, decide the facts, that he is the same person; that the act pardoned is the same with the one now charged; and that he has been pardoned for that act?

This is not a statute pardon. The pardoning power in the constitution is the executive power.

Waiving for the present the identity of the person and the act, and conceding that the pardon would discharge him, it is insisted:

1. That the court cannot give the prisoner the benefit of the pardon, unless he claims the benefit of it, and relies on it by plea or motion. The form in which he may ask it is not ma-

[United States v. Wilson.]

terial to this inquiry; but the claim must be made in some shape by him. It is a grant to him; it is his property; and he may accept it or not as he pleases.

The ancient doctrine was, that his plea of *not guilty* waived it, and that he could not afterwards rely on it: that a general plea of not guilty, was equivalent to a refusal to accept it.

This doctrine is not meant to be contended for. It is admitted that he may avail himself of it at any time by plea, before or after verdict or confession. But it is insisted that unless he pleads it, or in some way claims its benefit, thereby denoting his acceptance of the proffered grace, the court cannot notice it, nor allow it to prevent them from passing sentence. The whole current of authority establishes this principle. 2 Hawk. ch. 37, sect. 59, 64, 65; 4 Bl. Com. 402; Arch. Plead. and Ev. 55; 5 Bac. Abr. 292, 293, tit. Pard. E.; Comyn's Dig.; 13 Petersd. Abr. 82; Kelynge, 24; Radcliffe's case, Fost. 40; 1 Wils. 150; King v. Haines, 1 Wils. 214; Jenk. Cent. p. 12, case 62.

The necessity of his pleading it, or claiming it in some other manner, grows out of the nature of the grant. He must accept it.

We must not look at a pardon as if confined to capital cases. It exists in cases of misdemeanours also; and the same rule applies to both, and the same effect is produced in both.

A pardon may be granted on a condition precedent or subsequent, and the party remains liable to the punishment if the condition is not performed. 2 Hawk. ch. 37, sec. 45; 3 Thom. Co. Lit. 569, 615, note (*m*), and the authorities; Patrick Maddan's case, 1 Leach's Cas. 220, 263; The People v. James, 2 Caines's Rep. 57; Radcliffe's case, Fost. Cr. Law, 41.

Suppose a pardon granted on conditions, which the prisoner does not choose to accept? Suppose the condition is *exile*, and he thinks the sentence a lighter punishment? Suppose he thinks it his interest to undergo the punishment, in order to make his peace with the public for an offence committed in sudden temptation?

A prisoner might be placed in circumstances, when he would feel it to be his interest to suffer imprisonment or pay a fine, as the evidence of his contrition. Might he not, under such

circumstances, refuse to accept a general and unconditional pardon?

It is hardly necessary to speculate on the case of a man refusing to accept a pardon in a capital case. It is an event not even *possible*, where the party was in his sound mind. If it should happen, without doubt there is a power in the executive to prevent the execution of the sentence.

But we are now discussing *judicial* power, which, being governed by fixed laws and rules of proceeding, cannot exercise a discretion beyond the limits which the law has prescribed. They cannot look to cases which may possibly arise. There is sufficient power in another branch of the government to prevent any evil from the principle insisted on. The argument is fortified by the clause introduced into the acts of amnesty in England. Radcliffe's case, Fost. 44, 45.

2. But suppose the prisoner is not bound to plead it. How was it before the court in any other form? The attorney for the United States did not call on the court to allow it. No evidence was offered of the identity of Wilson, or of the act pardoned. Radcliffe's case, Fost. Cr. Law, 43. The identity had been found by a jury. How did the court obtain a knowledge of the fact?

A man who has been acquitted, cannot lawfully be punished in another proceeding. So of a former conviction. Arch. Plead. and Ev. 50 to 54.

Suppose another indictment for the same offence, and the court saw the man, and heard the evidence, and knew it to be the same, could they direct a verdict of not guilty? The defence must be pleaded with the proper averments.

If the party by an oversight omitted it, no doubt the court would give him an opportunity of correcting the error. But if he refused to plead it, and the jury found him guilty, or he pleaded guilty, could the court discharge him? If they could not, how can they do it with a pardon, when the party refuses to avail himself of the defence. Yet a former acquittal absolves him from all the consequences of crime as perfectly as a pardon. It declares him innocent. The pardon restores him to innocence in the eye of the law.

[United States v. Wilson.]

A pardon may release a part of the penalty inflicted by law and reserve the other. A pardon may be granted on condition, as already shown. May it not then annex any condition? a condition that a party shall undergo a part of the punishment?

It may be on condition that he will leave the United States.

Why may it not be that he will pay the fine, where the punishment is fine and imprisonment? Why may it not be on condition that he undergoes the imprisonment? Why not that he undergoes part of the imprisonment? 3 Johns. Cas. 333, United States v. Lukens, Coxe's Digest, title Pardon, 510.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

In this case the grand jury had found an indictment against the prisoner for robbing the mail, to which he had pleaded not guilty. Afterwards, he withdrew this plea, and pleaded guilty. On a motion by the district attorney, at a subsequent day, for judgment, the court suggested the propriety of inquiring as to the effect of a certain pardon, understood to have been granted by the president of the United States to the defendant, since the conviction on this indictment, alleged to relate to a conviction on another indictment, and that the motion was adjourned till the next day. On the succeeding day the counsel for the prisoner appeared in court, and on his behalf waived and declined any advantage or protection which might be supposed to arise from the pardon referred to; and thereupon the following points were made by the district attorney :

1. That the pardon referred to is expressly restricted to the sentence of death passed upon the defendant under another conviction, and as expressly reserves from its operation the conviction now before the court.

2. That the prisoner can, under this conviction, derive no advantage from the pardon without bringing the same judicially before the court.

The prisoner being asked by the court whether he had any thing to say why sentence should not be pronounced for the crime whereof he stood convicted in this particular case, and whether he wished in any manner to avail himself of the par-

don referred to, answered that he had nothing to say, and that he did not wish in any manner to avail himself, in order to avoid the sentence in this particular case, of the pardon referred to.

The judges were thereupon divided in opinion on both points made by the district attorney, and ordered them to be certified to this court.

A certiorari was afterwards awarded to bring up the record of the case in which judgment of death had been pronounced against the prisoner. The indictment charges a robbery of the mail, and putting the life of the driver in jeopardy. The robbery charged in each indictment is on the same day, at the same place and on the same carrier.

We do not think that this record is admissible, since no direct reference is made to it in the points adjourned by the circuit court: and without its aid we cannot readily comprehend the questions submitted to us.

If this difficulty be removed, another is presented by the terms in which the first point is stated on the record. The attorney argued, first, that the pardon referred to is expressly restricted to the sentence of death passed upon the defendant under another conviction, and as expressly reserves from its operation the conviction now before the court. Upon this point the judges were opposed in opinion. Whether they were opposed on the fact, or on the inference drawn from it by the attorney; and what that inference was; the record does not explicitly inform us. If the question on which the judges doubted was, whether such a pardon ought to restrain the court from pronouncing judgment in the case before them, which was expressly excluded from it; the first inquiry is whether the robbery charged in the one indictment is the same with that charged in the other. This is neither expressly affirmed nor denied. If the convictions be for different robberies, no question of law can arise on the effect which the pardon of the one may have on the proceedings for the others.

If the statement on the record be sufficient to inform this court, judicially, that the robberies are the same, we are not told on what point of law the judges were divided. The only inference we can draw from the statement is, that it was

doubted whether the terms of the pardon could restrain the court from pronouncing the judgment of law on the conviction before them.    The prisoner was convicted of robbing the mail, and putting the life of the carrier in jeopardy, for which the punishment is death.    He had also been convicted on an indictment for the same robbery, as we now suppose, without putting life in jeopardy, for which the punishment is fine and imprisonment; and the question supposed to be submitted is, whether a pardon of the greater offence, excluding the less, necessarily comprehends the less, against its own express terms.

We should feel not much difficulty on this statement of the question, but it is unnecessary to discuss or decide it.

Whether the pardon reached the less offence or not, the first indictment comprehended both the robbery and the putting life in jeopardy, and the conviction and judgment pronounced upon it extended to both.    After the judgment no subsequent prosecution could be maintained for the same offence, or for any part of it, provided the former conviction was pleaded. Whether it could avail without being pleaded, or in any manner relied on by the prisoner, is substantially the same question with that presented in the second point, which is, "that the prisoner can, under this conviction, derive no advantage from the pardon, without bringing the same judicially before the court by plea, motion or otherwise."

The constitution gives to the president, in general terms, " the power to grant reprieves and pardons for offences against the United States."

As this power had been exercised from time immemorial by the executive of that nation whose language is our language, and to whose judicial institutions ours bear a close resemblance; we adopt their principles respecting the operation and effect of a pardon, and look into their books for the rules prescribing the manner in which it is to be used by the person who would avail himself of it.

A pardon is an act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed.    It is the private, though official act of the executive magistrate, delivered to the

individual for whose benefit it is intended, and not communicated officially to the court. It is a constituent part of the judicial system, that the judge sees only with judicial eyes, and knows nothing respecting any particular case, of which he is not informed judicially. A private deed, not communicated to him, whatever may be its character, whether a pardon or release, is totally unknown and cannot be acted on. The looseness which would be introduced into judicial proceedings, would prove fatal to the great principles of justice, if the judge might notice and act upon facts not brought regularly into the cause. Such a proceeding, in ordinary cases, would subvert the best established principles, and overturn those rules which have been settled by the wisdom of ages.

Is there any thing peculiar in a pardon which ought to distinguish it in this respect from other facts?

We know of no legal principle which will sustain such a distinction.

A pardon is a deed, to the validity of which delivery is essential, and delivery is not complete without acceptance. It may then be rejected by the person to whom it is tendered; and if it be rejected, we have discovered no power in a court to force it on him.

It may be supposed that no being condemned to death would reject a pardon; but the rule must be the same in capital cases and in misdemeanours. A pardon may be conditional; and the condition may be more objectionable than the punishment inflicted by the judgment.

The pardon may possibly apply to a different person or a different crime. It may be absolute or conditional. It may be controverted by the prosecutor, and must be expounded by the court. These circumstances combine to show that this, like any other deed, ought to be brought "judicially before the court by plea, motion or otherwise."

The decisions on this point conform to these principles. Hawkins, b. 2. ch. 37, sect. 59, says, "but it is certain that a man may waive the benefit of a pardon under the great seal, as where one who hath such a pardon doth not plead it, but takes the general issue, after which he shall not resort to the

pardon." In sect. 67, he says, "an exception is made of a pardon after plea."

Notwithstanding this general assertion, a court would undoubtedly at this day permit a pardon to be used after the general issue. Still, where the benefit is to be obtained through the agency of the court, it must be brought regularly to the notice of that tribunal.

Hawkins says, sect. 64, "it will be error to allow a man the benefit of such a pardon unless it be pleaded." In sect. 65, he says, "he who pleads such a pardon must produce it *sub fide sigilli*, though it be a plea in bar, because it is presumed to be in his custody, and the property of it belongs to him.

Comyn, in his Digest, tit. Pardon, letter H, says, "if a man has a charter of pardon from the king, he ought to plead it in bar of the indictment; and if he pleads not guilty he waives his pardon." The same law is laid down in Bacon's Abridgement, title Pardon; and is confirmed by the cases these authors quote.

We have met with only one case which might seem to question it. Jenkins, page 169, case 62, says, "if the king pardons a felon, and it is shown to the court, and yet the felon pleads guilty, and waives the pardon, he shall not be hanged; for it is the king's will that he shall not, and the king has an interest in the life of his subject. The books to the contrary are to be understood where the charter of pardon is not shown to the court."

This vague dictum supposes the pardon to be shown to the court. The waiver spoken of is probably that implied waiver which arises from pleading the general issue: and the case may be considered as determining nothing more than that the prisoner may avail himself of the pardon by showing it to the court, even after waiving it by pleading the general issue. If this be, and it most probably is the fair and sound construction of this case, it is reconciled with all the other decisions, so far as respects the present inquiry.

Blackstone, in his 4th vol. p. 337, says, "a pardon may be pleaded in bar." In p. 376, he says, "it may also be pleaded in arrest of judgment." In p. 401, he says, "a pardon by act

of parliament is more beneficial than by the king's charter; for a man is not bound to plead it, but the court must, *ex officio*, take notice of it; neither can he lose the benefit of it by his own laches or negligence, as he may of the king's charter of pardon. The king's charter of pardon must be specially pleaded; and that at a proper time; for if a man is indicted and has a pardon in his pocket, and afterwards puts himself upon his trial by pleading the general issue, he has waived the benefit of such pardon. But if a man avails himself thereof, as by course of law he may, a pardon may either be pleaded on arraignment, or in arrest of judgment, or, in the present stage of proceedings, in bar of execution."

The reason why a court must ex officio take notice of a pardon by act of parliament, is that it is considered as a public law; having the same effect on the case as if the general law punishing the offence had been repealed or annulled.

This court is of opinion that the pardon in the proceedings mentioned, not having been brought judicially before the court by plea, motion or otherwise, cannot be noticed by the judges.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the third circuit and eastern district of Pennsylvania, and on the question on which the judges of that court were divided in opinion, and was argued by the attorney-general on the part of the United States: on consideration whereof, this court is of opinion that the pardon alluded to in the proceedings, not having been brought judicially before the court by plea, motion or otherwise, ought not to be noticed by the judges, or in any manner to affect the judgment of the law. All which is directed and adjudged to be certified to the judges of the said circuit court of the United States for the eastern district of Pennsylvania.