## Ex Parte Lockhart.

A condition attached to a pardon, granted by the Governor of Ohio, to a person convicted and committed to the State penitentiary for the period of five years, that he would immediately leave the State, and not return

during that period, is valid; and if, in violation of it, he is found within the State afterward, he is liable to arrest as an escaped convict.

SPECIAL TERM.—Proceeding in *habeas corpus.*

The facts are sufficiently stated in the decision.

*T. A. O'Connor,* for relator.

*Joseph Cox,* for the State.

STORER, J.  The relator, Lockhart, has sued out a writ of *habeas corpus,* claiming that he is unlawfully restrained of his liberty.  The respondent makes return upon the process, that he holds the relator in custody as an escaped convict from the Ohio penitentiary, of which institution the respondent is the warden.

This return is traversed by the relator, who claims to have received a pardon from the executive, by virtue of which he was discharged from prison.  The pardon is produced, verified in due form; but it appears to have been granted upon the sole ground that the convict would immediately leave the State, and not return for the period of five years.

Upon these facts it is urged by the relator's counsel, in the first place, that if his client is an escaped convict, the respondent has no power to arrest and detain him.  This question is readily disposed of by a reference to section 15 of the statute of 1835, Swan 605, which expressly authorizes and requires the warden "to arrest, or cause to be arrested, and again committed to safe keeping in the penitentiary, any and every convict who shall escape therefrom, and be found at large within the confines of the State;" and by other sections of the law, all sheriffs are invested with the same power.

It is claimed, in the second place, that the executive can not attach to the pardon he grants any such condition as that he has prescribed in the present case.  As, therefore, the prisoner has been discharged from confinement by the pardoning power, his release operates, *ipso facto,* as a virtual remission of all further punishment under the original sentence,

and his subsequent refusal to perform the condition imposed does not impair his present right to be liberated.

This proposition directly involves the power of the executive, and as that is determined, the question now before us will necessarily be settled.

By section 11 of article 3 of the constitution of Ohio, the governor "has the power, after conviction, to grant reprieves, commutations, and pardons, for all crimes and offenses, except treason and cases of impeachment, upon such conditions as he may think proper." This grant of power would seem to be sufficiently ample to satisfy the strictest constructionist, subject, nevertheless, to the restriction that the condition imposed was consistent with justice, and neither opposed to public policy or the law of the land.

To limit the authority thus conferred, we are referred to section 12 of article 1. It is there ordained, "that no person shall be transported out of the State for any offense committed within it." A similar clause is found in the constitution of 1802. These prohibitions, we think, must have been intended to limit the legislature in the punishment of crimes; referring the forbidden transportation or banishment to that which was involuntary on the part of the criminal, and made a part of the judgment of the tribunal pronouncing sentence.

It can not be claimed that a convicted felon may demand a pardon, as a matter of right; he has forfeited his liberty by the commission of crime; the law has subjected him to its penalty, and until the prescribed limit is reached, he must endure the infliction.

A pardon is, then, "but an act of grace and favor, proceeding from the power entrusted with the execution of the laws, exempting the individual on whom it is bestowed from the punishment the law inflicts for crime." This is the language of Marshall, C. J., in 7 Peters, 160, *U. S.* v. *Wilson*, and is but the epitome of what Sir William Blackstone, 4 Com. 396, denominates the "most amiable and gracious prerogative of the crown."

The government is represented by the executive, to whom is solely confided the discretion when the prerogative is to be exercised. It is his function to grant or withhold the act of clemency, whether it be the remission of a pecuniary penalty, the commutation of the sentence, or the liberation of the prisoner.

It is conceded that the power of absolute pardon is given to the executive; and this admission, as a general rule, would include the power to remit a portion of the punishment, or to modify it, as the circumstances of the particular case may properly suggest. Such, we might readily suppose, must be the result whenever the general authority is granted; nor can we find any difficulty in arriving at the conclusion, 'that if the right to restrict or modify, or release the punishment, in whole or in part, exists, the power to annex a condition to the favor conferred is not a necessary sequence.

As the grant of pardon is an act of grace on the part of the executive, it requires the assent of the criminal to its terms before it can avail. Thus, it is held "that a pardon must be pleaded specially at the proper time; for, if one is indicted, and has the king's pardon in his pocket, and afterward pleads the general issue, he waives all the benefit it would otherwise confer." 2 Hawk. P. C. 37, §§56, 64, 65; 5 Bacon's Ab. 292, Pardon, E.

It follows, then, to quote the opinion of Judge Marshall, already referred to, that "a pardon is a deed, to the validity of which delivery is essential, and delivery is not complete without acceptance. It may then be rejected by the person to whom it is tendered; and if it be rejected, we have discovered no power in a court to force it upon him." See also Kelyng, 45, *Copeland's case;* Foster, 40, *Ratcliffe's case.*

The effect of a pardon is to protect the criminal from subsequent imprisonment—to discharge the penalty demanded by the law—and, in Ohio, to restore the convict to all his civil rights and privileges; Swan 275, sec. 41. It is a favor granted to the person, subject alone to his adoption, and conferred for his benefit. He can not dictate the condition upon

which he is to receive it, nor yet claim it as an act of mere justice to himself. Having once accepted the pardon, it can only avail when its conditions are fulfilled by the party claiming its protection. If he refuses to perform them, or denies their obligation, he ought not to be the recipient of the gift.

By the common law, it was always held that the sovereign, as incident to his pardoning prerogative, had the right to annex such conditions as he pleased, and that whether precedent or subsequent. Coke Litt. 274, b.; 2 Hawk. P. C. 394; 4 Blackstone Com. 401.

Such has been the practice in England, where transportation for a term of years, or for life, is often made the condition of a pardon; and this is permitted, notwithstanding the *habeas corpus* act; 31 Car. 2, ch. 2, §14. The power is fully admitted in 9 Adolph. & Ellis, 731, *Watson and others* —*the case of the Canadian prisoners.*

In the United States, the principle thus indicated has very frequently been recognized and acted upon. The Supreme Court of New York, in 2 Caines, 57, *The People* v. *James*, fully affirm the right of the executive to impose such conditions upon the criminal. So, in 3 Johns. Cases, 333, *Pease case*, the Court of Errors decided that "the punishment might be mitigated, or changed from imprisonment to voluntary transportation." The same rule is adopted in South Carolina. 1 Bailey, 283, *Smith case;* 2 Bailey, 516, *Addington case;* 1 McCord, 178, *Mary Fuller's case.* So in Pennsylvania, 8 Watts & S. 198, *Flavell case.*

There is a distinction made, in the books, between a statutory pardon and a pardon under the great seal. The former, it is said, need not be pleaded, or accepted, as the law is virtually repealed which created the offense, whenever the Parliament enacts the liberating statute; while the latter is but a privilege personal to the party receiving it, and requires his willingness to accept it to be proved.

Here, there is no such difficulty. The pardon must be either accepted or rejected. If the criminal asks its protec-

tion, he must perform its conditions. He can not become a party to the act of grace, except to enjoy its benefits. He can not prescribe the terms of his obedience, but must ,submit to the requisitions of the executive, by whose clemency he has been released from imprisonment.

It is evident the relator does not intend to leave the State, and continue absent for the· term required by his pardon. Can he, then, remain in Ohio, and not be reclaimed by the proper authority, as a prisoner, under his former sentence? If the executive favor has not been accepted in its true spirit, and is not carried out to effect its real object, it ought not to shield the relator from arrest. The law only can be vindicated by remitting him to the custody of the proper officer, to serve out his term of labor in the penitentiary.

But, it is said, although the executive may prescribe conditions, he can not expatriate the person to whom he grants a pardon. The answer to this is, that the exile is voluntary on his part. He might, if he had been so inclined, have remained in custody until his sentence had been performed; but he has chosen voluntary absence from the State, with the enjoyment of liberty, to a residence in it as a felon, with a felon's punishment. He has exercised the option submitted· to him and with a full knowledge of the consequences of his disobedience, obtained the executive permission to leave the prison walls. He must, therefore, abide by the license given him, or reject it altogether.

There is nothing, we apprehend, in the objection, that the condition prescribed is against sound policy. It is certainly not opposed to good morals. We can not appreciate that system of either moral or legal ethics which would thus give immunity to criminals, and make the limits of our penitentiary coextensive with the boundaries of the State. Against such a visitation, it is our duty to save, if we can, the community in which we live.

Nor is there any soundness, we think, in the objection, that the condition is nugatory, because there is no mode in which it can be enforced by the removal of the criminal from the

State. There is no question of power involved. It is simply the application of the law that governs all agreements, more especially those dependent upon the performance of a stipulation by the party who seeks relief from a judicial tribunal. He must first do what he is bound to do by the terms of his contract, and not till then can he ask redress.

In the case before us, it appears the period required by the executive for the relator to remain without the State, was the unexpired term of the original sentence. If the court, who tried the culprit, were satisfied that his crime demanded imprisonment for the number of years they affixed as his punishment, he ought still to remain in custody, if he chooses to reside in Ohio. He has made a voluntary selection between freedom in another jurisdiction and criminal servitude here. We can not disappoint, much less compel him to forego, his willing preference.

On the whole case, we have no doubt as to the law, or our own duty in enforcing it.

The relator is remanded to the custody of the warden of the penitentiary, who is fully authorized to receive him as an escaped convict.