Casey, COh. J.,
dissenting:
The only thing that ever stood in the way of the claimant’s recovery was the fact that he had been guilty of a crime. There was á legal disability or outlawry resting upon him as a punishment for that crime. But when that crime is obliterated by a pardon the guilt is purged, the punishment is remitted, and the offender stands in all his legal relations and rights precisely as if-he had never committed the offence; just as one outlawed in England, when pardoned of the outlawry by the sovereign, was restored to all his rights and enabled to maintain and enforce them in all the courts by the production of a charter of pardon from the sovereign, when all his property taken into the King’s hands was-restored by writ of -amoveos maims. (Tidd Pr., p. 40.)
If this were a proceeding in fem in a district court under the seventh section of the act of July 17, 1862, to condemn this property, would not the pardon pleaded here be a complete and perfect answer to the libel 1' Of this there can be no doubt whatever. The very point was decided directly by the Supreme Court of the United States in the cases of Armstrong’s Foundry, (6 Wallace, 766,) and St. Louis Street Foundry, (6 id., 770.) If so, why should it not have the same operation and effect here ? *345 Are we not bound to administer tbe same law in tbe same way as other courts ? Is there one interpretation of a statute for ordinary courts and another exposition of the same enactment for the Court of Claims ? Do not all valid constitutional acts of any department of the government bind us as much as they do any other functionaries or tribunals ?
In the cases cited the provisions and requirements of the act of August 6,1861, denouncing forfeiture for using or allowing the property to be used in aid of the rebellion are as positive and peremptory as the clause in the third section of the act of March 12, 1863, upon which the majority rule this case. That act was as binding upon the district and Supreme Courts as is this act upon us. .They had no jurisdiction of the parties or of the subject-matter except as that act conferred it. Our jurisdiction is no more limited by statute than is that of the district courts. They have precisely such as is conferred by statute and not one iota more, and we have neither more nor less. Each is a statutory court, which can exercise legitimately only such jurisdiction and powers as Congress has conferred, and no others. The distinctions attempted in the opinion just read prove no difference between this court and others established by Congress in jurisdictional rights and powers. But they are based upon the assumption that Congress may prescribe the rule of decision for us as well as define our jurisdiction, and that, too, irrespective of any limitations and restrictions imposed by the Constitution of the United States, and without regard to the operation and effect of valid and constitutional acts of other departments of the government. Against such a construction I enter now my earnest dissent. It destroys the judicial character of this tribunal and makes it the mere sub-committee or commission of the legislative department of the government, to carry out its -varying will or register its incongruous decrees. When this shall be its acknowledged position it will necessarily sink into insignificance and neglect. • ■
But I do not so understand the duties and functions o,f this court. Congress confers, defines and regulates the powers and jurisdiction we shall exercise as it does of all courts, except the Supreme Court alone. It designates the subjects-matter that shall come within our cognizance. But, in deciding and determining upon them the Constitution is as imperative, *346 and the rights of the citizen as sacred and obligatory as they are, in any other forum. Hence, Congress may declare as a punishment for a crime that a citizen shall not sustain a suit in this court; but they cannot enact that the President shall not pardon him of that crime; for he holds that power, not' from them, nor subject to their will, but directly from the people through their Constitution. Nor can they enact that when he has pardoned the offence this act of clemency shall not have its legitimate effect of removing all penalties and disabilities consequent upon or growing out of the crime in all courts and in all places. And if they cannot do so directly neither can they do so indirectly; if it relieves in one court it relieves’ in all courts ; if it blots out the offence and remits all punishment for it the offender stands in all legal aspects and situations precisely as if he had never transgressed. And it is conceded that if he had never committed this offense of giving aid or comfort to the rebellion that his standing in this court would be unim-peached and unimpeachable. Yet such is his legal status today. Such is the undoubted and indubitable effect of the pardon, and it is with legal relations and rights alone that we are dealing. With the moral, the physical, or the historical existence of the offence, unconnected with its legal effects and consequences, we have no earthly concern, as a court called upon to adjudicate on the legal rights and relations existing between the government and its citizens.
To such an extent is this the case that the claimant could sustain in any competent court an action of slander against any one who should call him a traitor, the pardon having made him in law a new man and given him a new capacity. (5 Bac. Ab., 295; 2 Hawk. P. C. C., 37, § 33; 2 Bl. Com., 402; Plowd., 401; 7 Peters, 150.)
In Bishop’s Cr. L., § 713, it is said: “ The effect of a pardon is to absolve the party from all the consequences of his crimes.” (Cope v. The Commonwealth, 4 Casey, 297; Perkins v. Stevens, 24 Pick., 280.)
In the case of Ex parte Garland, (4 Wallace, 380,) a similar disability imposed by act of Congress was held by the Supreme Court of the United States to be removed by a full and unconditional pardon; and the same ground assumed here, that the granting of a privilege might be coupled with any conditions Congress might see fit -to impose, was promptly repudiated by *347 the court; for, says the court, “ the effect of this is to relieve the petitioner from all penalties and disabilities attached to the offence of treason committed by his participation in the rebellion. So far as that offence is concerned he is placed beyond the reach of punishment of any kind.” It is not within the constitutional ■poioer of Congress thus to inflict punishment beyond the reach of executive clemency.
It is true that the United States can only be sued in such courts, in such manner, and for such causes as Congress shall prescribe; but that, in the exercise of'that right, they can make it the means of either annulling or overslaughing the constitutional powers and prerogatives of other departments cannot be maintained. They cannot, in this or any other way, punish an offence which the President has pardoned.
The main reasons assigned in the majority opinion for refusing to consider the pardon are that it “belongs to courts which administer the criminal law, and it does not belong here, for we have no criminal jurisdiction and cannot find a crime, or inflict a punishment, nor take cognizance of an offence or an offender against the laws.” This is clearly a mistake, and is in direct opposition to the cases of Fx parte Garland, (4 Wall., 333;) Armstrong's Foundry, (6 id., 766;) St. Louis Street Foundry, (6 id., 770.)
Those cases were all heard and decided in courts that exercised for the time being no more criminal jurisdiction than we possess. The rule of law, as well as the rule of common sense, is, that whenever a civil disability is set up as resulting from an alleged criminal offence an acquittal by a competent court, or a pardon by competent authority of that offence is a pertinent as well as a complete answer to such allegation anywhere and in any court.
Nor do I consent to the proposition of the majority, that the power to sue the government, in this court, is aprivilege bestoived by Congress, and not p,. right conferred by the Constitution. The grant of such a power is as express and explicit as any other in the Constitution. It was put there not for the benefit of Congress, but to maintain and guard the rights of the citizen. And when the situation and wants of the country require such a court, and the right to sue the government, it is then as much the duty of Congress to provide such a tribunal as it is to coin money, to levy taxes, or regulate commerce; and it is the un *348 doubted right of the citizen to have such a court. And they have precisely the same warrant for doing’ so. And in the performance of-that duty have no more right to overstep constitutional limitations, or infringe upon the rights and functions of other departments, in the one case than in the others. And when such a court is established and its jurisdiction defined, no citizen of the United States, who has a cause falling within its enumerated faculties, can be excluded arbitrarily, and without just cause from maintaining a suit there. To so exclude him, there must be some specified legal disability. If he is to be punished by such exclusion for an offence committed, it'must be for an unpardoned crime. For he can no more be punished ' m that manner after pardon, than he can be tried and convicted and hung for the treason that was remitted and purged by the executive clemency. Could Congress exclude a man because he is a citizen of Pennsylvania or of Ohio ? or because he is a colored man, or a red-haired man, a Catholic or a Protestant ? I may be told that in all these specified cases the Constitution would interfere to prevent such exclusion. I grant it. But no more than it does in the case under consideration; for the constitutional power of the President to pardon is coextensive with the power of Congress to define and punish offences, .except in impeachments.
Congress may put limitations and restrictions upon suits brought either against the government or the citizen, but thes^ cannot make it the occasion for passing and enforcing laws forbidden by the Constitution; nor such as interfere with and annul the separate and independent powers and acts of co-ordinate branches, whether as a condition, limitation or restriction, or a direct enactment. A bill of attainder or ex post facto law; a religious test as a qualification for office; a title of nobility granted by Congress, are all equally void. They are so everywhere, and in all places, and especially in all courts; and a court that has not the power or the independence to declare them so would be entitled to but little respect from either Congress or the people.
But no question of the kind arises here. Congress had the power to impose the disability in the third section of the act of March 12,1863. The President had an equal power to remove it. He has done so. There is no conflict; each power was exercised by the same authority, and each is equally binding upon us.
*349 It cannot be disguised that tbe direct effect of tlie decision in tbis case is to set aside and disregard an unimpeaobed and valid pardon, invested with all the forms and solemnities the Constitution and laws require.
The property of the claimant was seized for the. crime which has been pardoned. It was sold and the proceeds are in the treasury. The law allows him to prefer his claim to the proceeds, in this court, within two years after the rebellion. The limitation has expired. By act of 27th July, 1868, this remedy is made exclusive of all others. By act of March 3, 1863, tlie judgment against him is made a perpetual bar to any other claim, or any other suit, in any form or tribunal. Therefore, by whatever specious sophistry and rhetoric the subject may be invested and mysfciñed, it comes to this at last — it is confiscation pure and simple, and nothing else. Moreover, it is confiscation by way of punishment for a crime which has been fully pardoned.
To take a convicted criminal from his cell, with a full, free, unconditional executive pardon in his hands, and hang him, would shock the moral sense of Christendom j biit in my opinion, it would not be a whit more illegal and unconstitutional than to confiscate this man’s property as a punishment for a crime, for which he holds up before us the full and accepted pardon of the President of the United States.