DlSSETTE, J.
This is an action in habeas corpus brought by one George Jiha against Edwin D. Barry, as sheriff of Cuyahoga County, *66 in which he complains that at the September Term, 1901, of this court, he was tried and found guilty of the misdemeanor of assault and battery; that on or about the 29th day of October, 1901, the Honorable George L. Phillips, the trial judge of said cause, sentenced him to pay a fine of $20 and costs, and that the costs amounted to the sum of $293, and that he was committed to serve sixty days in the workhouse of the city of Cleveland and to pay said fine and costs; that he entered on serving of said sentence in the workhouse, on or about the 29th day of October, 1901, and that thereafter, on or about the 9th day of November, 1901, by and through the consideration of the director of charities and correction of said city of Cleveland, and with the approval of the duly elected, qualified and acting mayor of the city of Cleveland, he was ordered released and discharged from said workhouse, he not having been committed to said workhouse under the provisions of Section 2100c of the Revised Statutes; that afterwards, to-wit, on or about the 19th day of November, 1901, the defendant, Edwin D. Barry, seized the body of said petitioner, without any trial or hearing being hád and without any warrant, information or indictment preferred, found or charged against him by any duly constituted court, tribunal, officer, person or authority whatsoever, and imprisoned him in the county jail of Cuyahoga county, Ohio; that he is now restrained of his liberty and is imprisoned in the Cuyahoga county jail by said defendant. He says that he is unlawfully restrained of his liberty by said defendant, and annexes to his petition a copy of the commitment, marked “Exhibit A,” and asks that a writ of habeas corpus may be granted and that he may be discharged from such unlawful imprisonment.
The copy of the commitment commands the sheriff of Cuyahoga county to take the relator, if he be found within the baliwick of the sheriff, and bring him before the court of common pleas forthwith, to abide the further order of the court, on a verdict of guilty of an assault and battery on an indictment against him for assault with intent to kill.
The defendant, the sheriff of Cuyahoga county, for answer ■to the petition of the relator, admits that he is the sheriff of *67 Cuyahoga county, state of Ohio, and) alleges that on September 29th, 1900, the grand! jury returned an indictment against said George Jiha, for the crime of assault with intent to kill; that the said George Jiha, at the September Term of this court, 1901, was placed on trial upon said indictment, before the Honorable George L. Phillips as judge of the court of common pleas of said county, and a jury duly impanneled and sworn; that after hearing the evidence in said case and due consideration, the jury returned a verdict of guilty of assault and battery, as contained in said indictment, upon which said court rendered judgment, which judgment and verdict remains unreversed, and in full force, effect and virtue in law.
That on the 29th day of October, 1901, said George Jiha was sentenced by the court to be imprisoned in the workhouse in the city of Cleveland, under the rules, regulations and discipline thereof for the' term of sixty days', and to pay a fine of $20 and costs of said prosecution, and that he stand committed until said fine and costs are paid of secured to be paid, .or until otherwise discharged by due course of law, and he attaches' a copy of the said sentence to his answer. That an order of commitment was duly executed by said court and that on or about the 29th day of October, 1901, the said Jiha was committed to said workhouse and began serving the sentence aforesaid. That one Harris R. Cooley was, on said 9th day of November, 1901, the duly appointed, qualified and aeting director of charities of the city of Cleveland; that on or about that day the said Harris. R. Cooley, in his official capacity as director of charities, without the approval of the Honorable Tom L. Johnson, the duly elected, qualified and acting mayor of the city of Cleveland, and contrary to law, did discharge the said George Jiha from said workhouse from further service of said sentence of said court, and that said Jiha was discharged and released' and given bis liberty there and then, and that said pretended discharge was and is unauthorized, illegal and void, for the following reasons:
1. That said Cooley, as such director, assumed to order -said discharge and did order the same, acting alone and without the approval of the mayor, whereas, the power to discharge is vested in the. director and the mayor acting together and concurrently.
*68 2. Said discharge was not made or ordered upon any ground, or for any cause upon which the siaid director and mayor are by law authorized and) empowered to discharge prisoners from said workhouse.
And he says that afterwards, to-wit, on the 19th day of November, 1901, by order of the Honorable T. K. Dissette, as judge of the court of common pleas of said county, a capias was issued for the arrest of said Jiha and directed to the said Edwin D. Barry, sheriff of said county, directing the said sheriff to arrest the said Jiha and have him before said court to abide the further order of the court, a copy of which capias is attached to this answer and marked “Exhibit B.”
And defendant says that in pursuance of said order of said court and capias he arrested the said Jiha, and that he now has the said Jiha in his custody as sheriff of Cuyahoga county, Ohio. He denies that he seized the body of said Jiha without authority, as alleged or attempted to be alleged in plaintiff’s petition, but that he was seized under and by virtue of the authority aforesaid; and he denies that the said Jiha is unlawfully restrained of his liberty as set forth in said petition, and prays that the said Jiha may be remanded to his care, custody and control, under and by virtue of said order; that said writ of hateas corpus may be quashed; that the petition herein may be dismissed and the costs of this proceeding adjudged against the petitioner, and for such other relief as is equitable and proper.
The plaintiff was brought before this court and admitted to bail pending the proceedings and decision of the court. On the hearing of the case the relator furnished the record of discharges kept by the director of charities, which contained the mayor’s approval and the statement of the director giving his reason for the discharge of the prisoner in the following language : “To give him another chance.’’
Counsel for the respondent objected to this record and sought to impeach it by showing that the approval of the mayor was entered upon it subsequent to the discharge of the relator. This court at the time did not deem it very important when or at what time the mayor endorsed his approval of the act *69 of the director, holding that while it was proper and regular that the approval of the mayor should be endorsed before the discharge, yet if it was actually made afterwards, it was curative and would not invalidate the discharge, if otherwise regular.
There is nothing in the application of the relator that shows that the fine and costs imposed by the court were paid by him or secured to be paid', and there was no contention made that such had been done.
The main contention in this case on the part of the relator is that the director of charities and correction had full power under the statutes .to grant the discharge here in question, and that the relator was- lawfully at large. Section 1545-67 of the Ohio statutes, in what is- commonly known as: the Cleveland-Federal plan act, says:
“The director of charities and correction shall have the charge and administration -of the workhouse, house of refuge and correction,, cemeteries and infirmary, and all charitable or penal institutions established by such city. He shall, subject to the approval of the mayor of such city, make such rules and regulations as are- necessary and proper for the employment, discipline, instruction, education, reformation and for the conditional release and return of all the prisoners confined under the provisions of law, and shall, from time to time, with the approval of the mayor, make such alterations, amendments and additions to' the rules and regulations for the government of prisoners in the workho-use as shall seem to him to best promote their reformation. He may with the approval of the mayor, and under such regulations as may be provided- by law or ordinance, discharge any person committed to the workhouse, except such- as are committed under the provisions of Section 2100c of this act, and any infant committed to the house of refuge and correction; but a record thereof shall be kept by hnjL and reported by the mayor to the council in his annual report, with a brief statement of the reasons therefor.”
Section 1545-68 provides as follows:
“The director of charities and correction shall have all the powers and perform all the duties which are by law or ordinance vested in or required -of the bo-ard of workhouse directors * * * and all laws 'and ordinances relating to work *70 houses, houses of refuge and correction, cemeteries and infirmaries in such cities shall apply to said department and be enforced by said director, except as herein otherwise provided.”
Section 2102, of the Bevised Statutes, in defining the power of the board of workhouse directors, says:
“The board shall have the power to discharge, for good and sufficient cause, a person committed to such workhouse; but a record of all such discharges shall be kept and reported to the council, in the annual report of the board, with a brief statement of the reasons therefor.”
It will be noticed that this section provides: (1) That the workhouse board may discharge for good and sufficient cause; (2) That a record of the discharge must be kept and reported annually to the council, and (3) That this report must contain a brief statement of the reasons' therefor.
The Cleveland Federal plan act (Section 1545-67, Bevised Statutes), gives the director of charities and correction all the powers and duties of the workhouse board and provides that all laws and ordinances relating to workhouses shall apply, except as herein otherwise provided.
It is a general rule of statutory construction, that where there is both a special and a general act, the special act controls where applicable.
Section 1545-67, of the Bevised Statutes, provides that the director of charities and correction—
“ (1) * * * may, with the approval of the mayor, and under such regulations as may be provided by law or ordinance, discharge any person committed to the workhouse,” except habitual criminals and infants. (This evidently takes the place of the first clause of Section 2102.)
(2) A record thereof must be kept and reported annually to the council. (This takes the place of the second clause of Section 2102.)
(3) This report must contain “a brief statement of the reasons therefor.” (This is verbatim the third clause of Section 2102.)
*71 Manifestly here is a special provision regulating the discharge of prisoners from the Cleveland workhouse, and differing from those in Section 2102. Therefore, by the express terms of Section 1545-67 as well as under the general rule of statutory construction above referred to, the director of charities and correction can discharge workhouse prisoners only on the conditions of Section 1545-67. These conditions are, that it be done, first, with the approval of the mayor; second, under such regulations, as may be provided by law or ordinance. Each of these provisions is a prerequisite of a valid discharge. The enactment of regulations-governing discharges, either by law or by ordinance, is a prerequisite of a valid discharge by the Cleveland director of charities and correction. No such regulations have been prescribed by law, for the reasons before given. Section 2102 can not be regarded as- such a regulation, and no other statute has been pointed out. No ordinance on the subject is claimed to e-xist, hence no regulation has been provided, either by law or ordinance.
It was contended on the part of the relator that the statute, having conferred the power and no ordinance- or statute having been passed prescribing regulations, that the director -of charities had the power to discharge and could exercise it in the absence of such regulations. We think that the intention of this section is that he shall only, exercise the power under such regulations as may be'provided by law or ordinance, and that in the absence of any such regulations, there can be no valid discharge.
But suppose that the director of charities and correction has the power to discharge, for good and sufficient cause,, conferred on the board of workhouse directors by Section 2102, and that he can exercise this power, in the absence of regulations provided by law or ordinance. Does this give him power to discharge at will or'whim or “to give a man another chance V’
It is a fundamental American rule of statutory construction that, if possible, such a construction shall be given a statute as to make it constitutional. It is self-evident that the Legislature can not give an executive officer like the director of chart- *72 ties and correction the judicial power to review convictions and sentences on the facts or law and to determine whether the convictions were right or wrong, or the sentences properly proportioned to the guilt.
Since the director of charities and the mayor can not review the judgment of the court that commits a convict, it follows that they can not discharge for any cause that existed at the time of sentences and that properly entered into the consideration of the trial or sentence, and since they can not exercise the pardoning power, but can discharge only “for good and sufficient cause,” it follows that the cause for discharge must he found in some fact or circumstance that either supervenes the commitment or that did not enter into the conviction or sentence.
I am clear, that the provisions of the law for the discharge of a convict from the workhouse relate exclusively to conditions which may affect the propriety of retaining him in confinement, and not to the propriety of his commitment. When a man has been legally tried and committed, the propriety of his commitment has been judicially determined, and is foreclosed. I am equally clear, that the power to discharge is not only distinct from the pardoning power, and distinct from judicial power, but that it can be exercised only when it affirmatively appears that it is exercised upon ground that does not impinge upon the pardoning power or upon the judicial power. In other words, when the power to discharge is exercised, it must affirmatively appear that its exercise has been based upon ground that authorizes it; otherwise, its exercise is a nullity.
The discharge from the workhouse is not a legal right that belongs to any convict, for he has had all his legal rights in his trial; and such discharge is not a matter of grace, for that belongs only to the governor. It is 'an act of humanity, and can be authorized only in cases where a condition has arisen that makes the further confinement of the convict inhumane. This, of course, restricts the discharge of workhouse convicts to few and exceptional eases.
*73 A power to remit a punishment of imprisonment at the will or whim of the officer given the power falls within every definition of the pardoning power.
By Section 2, Article III of the Constitution, the whole pardoning power, except as to treason and cases of impeachment, is vested in the governor exclusively, and can not be exercised-directly or indirectly by any other authority.
In United States v. Wilson, 7 Peters, 150, the court defines what a pardon is:
“A pardon is an act of grace proceeding from the power entrusted with the execution of the law which exempts the individual on whom it is:, bestowed from the punishment the law inflicts for a crime he ha® committed.
“A pardon” (according to B-ouvier’s Law Dictionary) “discharges the individual designated from all or some specified penal consequences of his- crime. It may be full or partial, ab-' solute or conditional.”
In Abbott’s Law Dictionary, it is defined as—
“Governmental forgiveness of an- offense; authorized remission- of a punishment for crime; the executive act by which a convict may be released from penal duties.”
And the same authority says that—
“Pardon permanently discharges the individual designated from all or some specified penal consequences of his crime. ’ ’
Black’s Law Dictionary defines a pardon as follows-:
“An act of grace proceeding from the power entrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law. inflicts for the crime he has- committed.”
Where, a® is the ease in Ohio, the Constitution gives the pardoning power to the governor (Constitution of 1851, Article III, Section 11) this power can not be conferred by the Legislature on others.
This is the doctrine held by -our own-' Supreme Court, or rather assumed to be the doctrine by our Supreme Court, in two eases, in the case of Ex parte Scott, 9 O. S., 58, and in *74 the case of The State, ex rel Attorney-General, v. Peters, 43 O. S., 629.
In the former ease the statute giving the benefit of the insolvent laws for persons imprisoned for non-payment of fine was under consideration, and the court held that it was not an exercise of the pardoning power for the Legislature to confer such benefits; and in the latter case, where the contention was for shortening the time of imprisonment made by the Legislature, the court held that this provision related only to the discipline and regulations of the penitentiary and that to permit managers of the penitentiary to parol prisoners is an effort to reform them because, when paroled, they are still in the eye of the law in the penitentiary, in the custody of the managers and subject to their will at any time to be replaced within the walls.
A careful study of the guarded language and of the reasoning of the court in this last case can leave no doubt that .the court would have held that the power to grant at will or whim an absolute, final or unconditional remission of a sentence to be an exercise of the pardoning power.
Again, it has been repeatedly said by our Supreme Court, that no one can dispute that under Article II, Section 26 of the Ohio Constitution of 1851, the Legislature can not make that criminal in one county of the state which was innocent in another, nor inflict a punishment for an act in one county different than that inflietable in another county.
In the case of Ex parte Van Hagan, 25 O. S., 426, in commenting upon Article II, Section 26 of the Constitution, which provides that all laws of a general nature shall have a uniform operation throughout the state, the court says :
“Crime, by whatever name it may be called, or however it may be defined by an act of the General Assembly, will be of the same nature in every part of the state.”
In Cass v. Dillon, 2 O. S., 617, the court says:
“The origin of this section (of the Constitution) is perfectly known. The Legislature had often made it a crime to do in one county or even township what was perfectly lawful to do *75 elsewhere, and had provided that acts, even for the punishment of offenses, should be in force or not in certain localities: as the electors thereof might respectively decide. It was to remedy this evil and to prevent its recurrence that this'section (of the Constitution) was framed.”
In Ex parte Falk, 42 O. S., 636, a like reasoning was adopted.
It is difficult to distinguish such statutes as the one under consideration from one by which in one county a man is committed to jail on conviction of a misdemeanor, there to stay until the sentence has been fully carried out or he has received a pardon from the governor, while in another county, on conviction of the same offense, he may be released the moment he enters the workhouse', at the will or whim of the director of charities and correction. We are unwilling to give such a construction to Section 2102 of the Revised Statutes, and, holding as we do, that the director of charities and correction, in the absence of such regulations as the statute contemplates, by- law or ordinance, has no authority to discharge prisoners committed! to the workhouse, we must also hold that this discharge is invalid. But, assuming that the Legislature conferred the power and that, so far as the statute is concerned, the director of charities is clothed with power in the absence of such regulations, then we should hold that the Legislature had no power itself to confer any such authority upon the director of charities, because a power to remit the punishment of imprisonment at the will or whim of the officer given the power, falls within every definition of the pardoning power; the Legislature itself could not evercise the pardoning power nor confer the authority to exercise it upon the director, and if it did, if the Legislature had the power, the statute clothing the director of charities with power and authority to release, in this county, would be special legislation on a subject of a general nature and would be unconstitutional. So that we 'are compelled to hold that the discharge of the relator from the Cleveland workhouse by the director of charities was a discharge without authority of law.
Now, we come to the next contention of the relator, that even though we should find that he was unlawfully discharged from *76 the workhouse, the fact that he was discharged by one who seemed to be clothed with statutory authority to discharge him, he can not be retaken by the sheriff and recommitted to the workhouse; that he is not responsible for the mistake of the director of charities, and that he can not be treated as a fugitive from justice or an escaped prisoner.
The authorities define an escape as either wilful or voluntary. An escape is where a person, lawfully restrained of liberty, either violently or privily, evades such arrest and restraint, or .is suffered to go at large before delivered by due course of law.
There are two kinds of escape, one willful or voluntary—• that is, by consent or default of the officer—the other negligent.
A criminal who has been voluntarily permitted by an officer to escape, may be rearrested by him, or others on the same or a new warrant. When retaken, except in capital eases, after the time for execution has passed, there need be no new award of judgment; but he must be required to serve out his term, not counting the time he was at large, even though the time since the beginning of the imprisonment has gone by.
Again, if he has. not served out the fine and costs—for these are a part of the punishment—hé may be retaken.
In 21 O. S., 414, it was determined that in that particular case a pardon by the governor did not remit the costs which the prisoner had been adjudged to pay, because, in terms, the pardon did not refer to the costs.
There is no allegation in the petition that the relator served out the fine and costs.
In the ease of Bass v. State, 29 Ark., 142, the officer, a constable, released the prisoner on the order of the justice of the peace who issued the warrant, and who had taken bail, which he had no power to take, it being a capital ease; and in the ease of Meehan v. State, 46 N. J. Law, 355, where the keeper of a house of correction released the prisoner on the order of the committing magistrate, it was held that while it was not a voluntary escape, because done under a mistake of law, it was a negligent escape.
E. M. Heisley and Max P. Goodman, ifor the relator.
Harvey Keeler, Prosecuting Attorney, for the respondent.
There are numerous holdings to the effect that in case of civil arrest, a release on order of a court without power is an escape.
While authorities differ as to whether it is a voluntary or a negligent escape, when an officer permits a prisoner to go free under a mistake as to the authority of the magistrate making the order for the release, all agree that such release is an escape.
The court is strongly inclined to believe that the Legislature never intended to grant power to the director of charities and corrections to interfere at all with the sentences imposed by the'court of common pleas in county or state cases as distinguished from the sentences imposed by the municipal court. It is made the duty of the mayor, in the act in question, to make a report to the council annually of the discharge of such prisoners as may have been released from the workhouse, and he is required to give a brief reason therefor. Certainly the city council has no jurisdiction in state or county cases, and the fact that this report is to be made to the city council would seem to indicate that the discharges which the mayor is required to report annually and give his reasons for such discharges are only those that the council of the municipality may have jurisdiction over.
The relator will, therefore, be remanded to the care, custody and control of the sheriff of Cuyahoga county, the writ hereinbefore issued to be quashed, the petition dismissed and the costs adjudged against the relator.
Note.—The case of Jiha v. Barry, Sheriff, was affirmed by the circuit court without an opinion, January 26, 1903. Judge Caldwell, who rendered the decision of the court, said:
“We have carefully examined the opinion in this case in the court of common pleas and we come to the same conclusion that Judge Dissette came to in that ease, and we think we can not give any better reasons than were given in that opinion. ’ ’