Staples, J.
The record in this case presents for our consideration two important and interesting questions. First, has the Governor of the State the constitutional power to grant conditional pardons ; and second, is the paper which emanated from the Executive Department on the 18th of May 1872, and is filed as an exhibit in this cause, to be considered a conditional pardon, or a mere commutation of punishment. It is laid down in Blackstone Com., vol. 4, p. 401, that a pardon may be conditional—that is, the King may extend his mercy upon what terms he pleases, and may annex to his bounty a condition precedent or subsequent, on the performance whereof the validity of the pardon will depend: and this by the common law. All the writers on criminal law concur in this doctrine ; and the English books ' are full of authorities in support of it. 1 Chitty’s Crim. Law, 714 ; 2 Hawkins P. C., Pardon ; 1 Leach Crim. Law, 223, 393 ; In the matter of Parker & als., 5 Mees. & Welsb. R. 32.
This power has been exercised by the King of Eng- ■ land from time immemorial, not as a part of his royal prerogative, but as an incident to the general pardoning power. The King may annex a condition to his bounty, not because he is king and clothed with royal attributes, but because being invested with the general power of pardoning, he has the right to prescribe the terms and limitations under which he will exercise it. To “grant conditional pardons,” theu, simply implies a contract between the sovereign power and the criminal, that the *792 former will release the criminal upon certain conditions imposed by the sovereign and accepted by the criminal. It is not an inference from the general power of pardon, but appertains to it and is a part of it.
These ai’e the doctrines and maxims of the common law. They were familiar to the jurists and statesmen of Virginia at the time of the adoption of our first constitution. In the language of Chief Justice Marshall, “As the power has been exercised from time immemorial by the executive of that nation, whose language is our language, and to whose judicial institutions ours bears a close resemblance, we adopt their principles respecting the operation and effect of a pardon, and look to their books for the rules prescribing the manner in which it is to be used by the person who would avail himself of it. United States v. Nelson, 7 Peters U. S. R. 150.
The constitution of 1776 declares that the Governor shall, with the advice of the council of State, have the power of granting reprieves or pardons, except where the prosecution shall have been carried on by the House of Delegates, or the law shall otherwise particularly direct. And this power is conferred in language almost identical in all the amended constitutions, except that it can now only be exercised after conviction. The same terms are used substantially in the constitutions of nearly all the States, and in the constitution of the United States. For example, the constitution of Pennsylvania, both of 1790 and 1838, provides that the Governor shall have power to remit fines and forfeitures, and grant reprieves and pardons. Under this provision, it was unanimously decided by the Supreme court of that State, that “ the Governor may annex to a pardon any condition, whether precedent or subsequent, not forbidden by law ; and it lies on the grantee to perform it: and if the condition is not performed, the original sentence remains in full force, and may be carried into effect.”
*793 The Supreme court of Massachusetts, in construing a ■similar clause in the constitution of that State, used this language : “ The power of pardoning offences is conferred on the executive by the eighth article of the ■second chapter of the constitution. It is general and •extends to all cases, except convictions by the Senate on impeachment. This exception proves the comprehensive nature of the power. The only limitation to its •exercise is that pardon shall not be granted before conviction. The general power necessarily contains in it the lesser power of remission and commutation. If the whole offence may be pardoned, a fortiori, a part of the punishment may be remitted, or the sentence commuted. If an absolute pardon may be granted, of course a conditional one may be.” Perkins v. Stephens, 24 Pick. R. 278.
In the People v. Potter, 1 Parker’s Crim. Rep. 47, 53, Judge Edmonds of the Supreme court of New York, in •commenting upon the words “ shall have power to grant reprieves and pardons,” declares, “ The decisions of the courts in our State, in several of the States of the Union, in the courts of the United States and in the courts of the British Empire, have all regarded these words as conveying the right to attach conditions to the grant of a pardon.” The courts of South Carolina, of Arkansas, New Jersey and Maryland, have construed like clauses in the constitutions of those States in the same way. If there are any contrary decisions, they have escaped my attention. It is true, that under the constitution and laws of several of these States, express power is given to the executive to grant pardons upon such terms as he may think proper; but the courts there hold that the power in question is conferred by the general words, and exists independently of these enactments. Mr. Wirt, while Attorney-General of the United States, expressed the opinion, that the power of pardoning absolutely includes the power of pardoning conditionally; on the *794 principle that the greater power includes the less. Opinions of Attorney-General, 250.
These doctrines have received the unqualified assent of the most approved writers on criminal law in the United States. The rule is thus expressed in Bishop on Crim. Law, vol. 1, sec. 760 : A pardon may be full or partial, absolute or conditional. In some of the States this is so by the express words of the constitution ; and where the words are not express, the same result flows from the doctrine that with us a power general in its terms takes the construction given it ,in -the English common law, whence our law is derived.
This citation of authorities would be incomplete without some notice of the case of ex parte Wm. Wells, 18 How. U. S. R. 307 ; a well considered decision of the Supreme court of the United States. In that case Wells was convicted of murder in the first degree, and was sentenced to be hanged. A pardon was granted him by President Fillmore, upon condition that he be imprisoned during his natural life; which was accepted by the prisoner. He, however, applied for a writ of habeas corpus, on the ground that the pardon was absolute, and the condition void. The Supreme court was of opinion, that the language used in the constitution, as to the power of pardoning, must be construed by the exercise of that power in England prior to the revolution, and in the States prior to the adoption of the constitution ; that the power of the president to pardon conditionally is not one of inference, but is conferred in terms; the language being, “to grant reprieves and pardons”; which includes conditional as well as absolute pardons.
It must be borne in mind that under the Federal system there are no common law offences ; the courts have-no common law jurisdiction ; and the President can only exercise such powers as are specifically granted in the constitution. Whereas in this state the common law *795 has been adopted, and made tbe rule of action, unless plainly repugnant to the constitution and statutes of the state. The reasons with us for adhering to the common law doctrines in regard to granting conditional pardons, are much stronger, therefore, than any applying to the Federal courts. The practice of granting such pardons, it will thus be seen, is fully recognized in England.; is fully sustained by the most approved writers in this country ; by the decisions of both Federal and state courts. The identity of the words used in nearly all the constitutions, the uniformity of construction given to those words by all the courts which have had the subject under consideration, lead irresistibly to the conclusion that the framers of our constitution employed the same terms in the sense thus explicitly and plainly established.
The counsel for the prisoner tells us, however, that whatever may be the rule elsewhere, the case of Commonwealth v. Fowler, 4 Call, 35, has established a different doctrine in Virginia. A slight examination of the case will show that this is a mistake. Fowler was convicted of felony in the General court; and was pardoned by tbe Executive on the express condition that he (Fowler) shall forthwith submit himself to such authority as the Executive shall put over him, for the purpose of confining him to labor bodily in such manner and on such works as a majority of the directors of public buildings shall direct ; and he shall continue to work thereon as a’common laborer for the space of three years, and shall not be absent therefrom at any time without due license first obtained. This court decided this condition to be illegal. hTo reasons are given, and we are therefore left to conjecture the grounds of the decision. It will be noted, however, the court do not say that the governor is not authorized to grant conditional pardons; but that “the condition annexed to this pardon is illegal.” And so it might well be held. The effect of the condition was to make the prisoner practically a slave *796 for three years. The authority to be put over him might at-any time be changed at the caprice of the governor ; and the labor he was required to perform might be varied or increased at the pleasure of persons controlled by no ^aw or authority. It is obvious that the punishment was unknown to our system of jurisprudence, and might have been pei’verted to purposes of the grossest injustice and tyranny. Ho court could hesitate to pronounce such a condition illegal; and this was all the court intended to say. The case is no authority upon the present question, and would never have been relied on as such but for the mistake of the reporter in his statement of the points decided.
The counsel for the prisoner, in the course of his argument, cited a section reported by the revisors of 1847 •and 1848, and recommended for adoption by the legislature. It provides that the governor, upon the petition of the person sentenced, may grant him a pardon upon ■such conditions, under such limitations and with such restrictions as may be deemed proper by the governor and assented to by the petitioner. The counsel relies upon this recommendation of the revisors and the refusal of the legislature to adopt it, to show that according to the prevailing opinion the executive did not possess the power to grant conditional pardons ; and it was inexpedient in the opinion of the legislature to invest him with it. The revisors, however, do not assert that the executive does not possess the power in question. They merely say the regularity of a conditional pardon has ■been doubted in Virginia, and the section proposed will remove that doubt. The legislature may have declined to adopt the provision from a conviction that the constitution conferred upon the executive full power over the whole subject, and legislation was thought not only unnecessary, but improper. But whatever may have been the reasons controlling the legislature, it is clear that .neither its collective will nor the opinions of the indivi *797 dual members can, in any wise, impair cr restrain tbe' exercise ef powers vested by tbe constitution in tbe executive department. It may be that the practice in Virginia has not been in conformity with the views here expressed. The question, however, is not one of practice, but purely of constitutional interpretation. The language of the constitution is, the governor “ shall have power to grant reprieves and pardons.” What kind of pardons ? Unconditional it is said. But why unconditional ? The constitution makes no such restriction. There are vai’ious kinds of pardons ; full, absolute or unconditional, partial and conditional. One of these is as fully embraced in the words of the grant as the other; all are contained in it. Can we conceive of a case in which the greater power does not include the less. To use the words of Mr. Justice Campbell, of the Supreme Court of the United'States, “ the real language of the constitution is general—that is common to the class of pardons, or extending the power to all kinds of pardons kno wn in the law as such, whatever may be their denomination. ¥e have shown that a conditional pardon is one of them.”
These considerations, it seems to'me, justify us in holding that the power to grant conditional pardons is vested in the executive of Virginia. In respect to the policy of so vesting it, there cannot be a question. The . power of granting conditional pardons must reside some where; and by common consent of all the States it is vested in the executive department. It has been well said that the authority to suspend the operation of laws, is a privilege of too high a nature to be committed to many hands, or to those of any inferior officer in the State. If the chief magistrate can be trusted with the power of absolute and unconditional pardon, he is certainly a safe depositary of the qualified power. Cases are constantly arising which call for the exercise of executive clemency in a modified form, by reason of cir *798 cumstances subsequently occurring, or which could not have been taken into consideration by the courts and juries. Even the public good, which is the ultimate end of all punishment, sometimes requires that some milder form of punishment should be substituted for that which was enforced by the sentence of the law.
The objection sometimes urged, that no man can contract for his own imprisonment, is answered by the consideration that the convict, having already forfeited his life or his liberty, surrenders nothing by his contract with the executive. The substituted sentence is his own voluntary choice; and the courts merely execute that choice in the infliction of a milder punishment. A performance -of the condition renders the pardon absolute; and entitles the felon to his discharge from all the penalties consequent upon the conviction. On the other hand, 'his failure to perform renders the pardon utterly void ; and he may be brought to the bar and remanded, to suffer the punishment to which he was originally sentenced. Bacon Abridg. Pardon, E.
It is to be borne in mind there is a material distinction between a conditional pardon and a mere cummutation of punishment. A conditional pardon is a grant, to the validity of which acceptance is essential. It may be rejected by the convict; and if rejected, there is no power to force it upon him. A commutation is the substitution of a less for a greater punishment, by authority of law, and may be imposed upon the convict without his acceptance, and against his consent. In this state the executive is only authorized to commute capital punishment; whereas he may grant conditional pardons in all cases legally involving an exercise of the pardoning power.
It remains now to inquire whether the warrant of the executive in this case is to be regarded as an attempted commutation of punishment, or as a conditional pardon. After reciting that Lawrence Murphy is a fit subject for *799 commutation of sentence, the warrant declares that the punishment of the prisoner is hereby commuted from imprisonment in the penitentiary for the term of three years into imprisonment in the city jail of Richmond for the term of twelve months from the date hereof. And at the conclusion is the endorsement of the prisoner, “accepting the commutation with the condition set forth,” and bearing the same date with the warrant.
Row it is true that this paper does not purport to be a pardon of any sort, but a mere commutation of punishment But the question recurs, whether the acceptance by the convict of the terms imposed by the executive does not give to the warrant the operation and effect of a conditional pardon. Clearly the original punishment Is remitted, and a milder sentence is substituted. It is true this could not be done without the consent of the convict. It is equally clear that with his consent it might be done. Commutation is simply the substitution of a less for a greater penalty or punishment. If followed by the acceptance of the convict, it practically amounts to the same thing as a conditional pardon. I do not mean to assert it has the effect of a full pardon, which, when performed, ■ not only remits the original punishment, but restores the competency of the offender and removes the infamy of the conviction. Certain it is, it has the operation and effect of a partial pardon, which is described in many of the cases as merely remitting or releasing the punishment without removing the guilt of the offender. Perkins v. Stevens, 24 Pick. R. 277; Ex parte Garland, 4 Wall. U. S. R. 233, 380.
It has been argued, however, that this warrant cannot be considered a conditional pardon, because neither the word “ pardon ” nor any equivalent phrase is used therein. It is well settled that no technical words or terms are necessary to constitute a pardon. In some of the ancient pardons a variety of language is to be found, such as acquit, pardon, release and exonerate. In Penn *800 sylvania the practice is “to remit the sentence,” and this is equivalent to a pardon of the offence. Hoffman v. Coster, 2 Wharton R. 453. In Massachusetts similar words are construed a pardon of the punishment, but not as a removal of the disabilities consequent upon a conviction. And in South Carolina an instrument sigued by President Monroe, ordering “that the prisoner be forthwith released from prison,” was decided to be a full pardon, upon the ground that it accomplished all the-benefit to the prisoner that is practicable, and seemed to be entitled to every liberality of construction that may not contravene any well settled adjudications. Jones v. Harris, 1 Strob. R. 160.
A case somewhat similar to the present is found in 14 Mass. R. 472. The opinion of the Supreme court of that State being asked upon the right of the Legislature-to commute the punishment fixed by law, after sentence-has been given ; the judges unanimously certified that the Legislature had no such power; but that the power of pardoning offences was solely in the Governor, by and with the advice of thecouncil; to lohich poioer the right of commuting punishment—if by such right be meant a right of pardoning upon condition of the convict’s voluntarily submitting to a lesser punishment—must be a necessary incident. A note to this case by Chief Justice Cushing, shows he fully recognized the distinction between a commutation authoritatively imposed, which was unknown to the Massachusetts constitution, and a commutation voluntarily accepted by a felon, which might be regarded as a necessary incident to the pardoning power.
The object of the courts in construing instruments of this character is to carry out the intention of the parties;. and wherever that is doubtful, the grant is interpreted most beneficially for the citizen or subject, and most strongly against the king. This is an universal rule in the interpretation of pardons. 1 Bishop Crim. Law, sec. 757, and cases cited.
*801 It is said, however, that the executive did not intend in this case, to grant a pardon of any kind, absolute or conditional. He certainly intended to remit the punishment imposed by the law, and to substitute another in its place. He certainly did not intend to do so without the consent of the convict, unless we are prepared to hold that.he was either ignorant of his constitutional functions, or that it was his purpose to transcend them. ■We must presume it was his intention to exercise just such powers as are vested in him by the constitution ; and we should give his official acts a fair and liberal interpretation, so as to make them valid if possible. In cases involving merely pecuniary rights and obligations, the courts are even astute to give effect to the contracts of parties. Thus a deed which cannot operate in the precise way in which it is intended to’take effect, shall yet he construed in another, if in this other it can be made effectual. For example, a deed intended for a release, which cannot operate as such, may still take effect as a grant of the reversion, as a surrender or an attornment, or even as a covenant to stand seized. 2 Parsons on Cont. 504, and cases cited.
It is also held, if the king’s grant admits of two interpretations, one of which will make it utterly void and worthless, and the other will give it a reasonable effect, then the latter ■ is to prevail, for the reason, says the common law, that it will be more for the benefit of the subject and the honor of the king ; which is more to be regarded than his profit. 10 Coke, 67 f.; 2 Pars, on Cont. 506, note N.
And the same rule should be held to apply to the grants of a State. It applies with peculiar force whenever the life or liberty of the citizen is involved. The anxiety of the courts in all such cases to effectuate rather than defeat the intention of the State, expressed through its chief magistrate, must be regarded as eminently wise, just and beneficial.
*802 In the present case, should the convict be remanded to the penitentiary under the original sentence, the executive,' if he adheres to his original purpose, will accomplish the object aimed at by a slight change in the phraseology of the warrant; but the intent will then be no. more manifest than now; nor would the practical operation of the warrant be varied by this change. Indeed, the same result will be accomplished by a simple reprieve of the convict for one year, and a pardon at the expiration of that period.
Upon the whole, it seems to me, we are well justified in construing this warrant as a conditional pardon, if not of the offence, certainly of the punishment imposed by the law. The convict has the right to perform the condition by enduring the substituted punishment prescribed by the executive ; and upon serving out the full term of twelve months in the city jail of Richmond, he will be entitled to his discharge from any further punishment. The period of his release on bail is, however, not to be included in estimating or computing his term of confinement in the jail. The judgment of the Circuit court of the city of Richmond must, therefore, be reversed, and the case remanded to be proceeded in in-accordance with the views herein expressed. If the said Lawrence Murphy shall appear before said court in answer to his recognizance, he will be remanded to the city jail, to undergo the punishment prescribed in the warrant of the executive.
In the course of this opinion, nothing has been said in respect to the kind and nature of the conditions the executive may annex to his pardon. Nor is it intended to express any opinion upon that point, except to say they must not be impossible, immoral or illegal. It is clear, that he is authorized to substitute, with the consent of the prisoner, any punishment recognized by statute or the common law as enforced in this Statel *803 In this case there can be no question as to the legality of the condition.
Since the foregoing opinion was prepared, I have seen the case of Ball v. Commonwealth, 8 Leigh, 726. I have only to say the opinion expressed by Judge Fry and concurred in by the other judges, is a mere obiter dictum, ivas not called for by anything in the case ; and is, therefore, no authority for this court. Besides, Judge Fry does not asseit that conditional pardons are unconstitutional. He is very careful not to say so. He merely says that in this State pardons are absolute constitutionally or from ;practice. And in point of fact this latter is entirely correct. But as I have already attempted to show, it is not a question of practice ; but purely of the interpretation of a plain constitutional provision.
Bouldin, J. There can be no doubt about the extent of the pardoning power of the British Crown. On that subject I concur entirely in the views of the court. But the question before us is not how a high prerogative is exercised by the King of Great Britain, but to what extent the power has been vested in the Governor of Virginia under her constitution and laws. On that question I am constrained to differ with my brethren. I do not concur in the opinion just expressed, that the pardoning power of the Governor of Virginia is, in general, co-extensive with that of the crown of Great Britain. On the contrary, I fully concur with Judge Fry and all the judges of the General court, in Ball’s case, 8 Leigh, 726, 730, in the opinion that “the pardoning power in this State is, in its nature or practice, more limited than that of the King of England ”; that the general power of conditional or commutative pardon does not exist in the executive of Virginia under the constitution and laws of the State.
In Virginia, ever since she became an independent *804 State, the pardoning power has been exercised, not as a prerogative of the executive—an incident to executive' power—hut in a much more restricted form and under written laws. It was first granted to the Governor of Virginia by the constitution of 1776—the first written constitution. It will be seen, from the face of that instrument, that the people of Virginia, having just thrown off a foreign government and declared it dissolved, were exceedingly jealous of the exercise by the Governor of the State of any-of the high prerogative powers of the British crown ; and they were very careful, therefore, to provide against it in the adoption of their organic law. In conferring on the governor executive power, they did it in restricted terms. They provided expressly that he should, “with the advice of a council of State, exercise the executive powers of government,” {not as then exercised by the King of England, but) “according to the laws of the Commonwealth; and shall not, under any pretence, exercise any power or prerogative by virtue of any law, statute or custom of England” ; and then, as if to preclude the conclusion that the pardoning power was included íd the grant of “the executive powers of government,” that power is specially conferred in the following limited terms:
“But he shall, with the advice of the council of State, have the power of granting reprieves or pardons, except where the prosecution shall have been carried on by the House of Delegates, or the law shall otherwise particularly direct; in which cases no reprieve or pardon shall he granted, but by resolve of the House of Delegates.” Constitution of 1776, 1 Rev. Co. 1819, p. 35, § 9.
It was under this restricted grant of the pardoning power, and not as an incident to “the executive powers of government,” that the governors of Virginia, in the early period of her history, exercised the power of pardon; and it is obvious, from the very terms of the grant, that the exercise of that power was not, as in *805 England, a discretionary executive right; but was expressly subject to legislative limitation, restriction and control. It could only be exercised in accordance with this grant, and as limited and explained by the laws of the State-
But the power of “pardon” was certainly granted ; and the question necessarily arises, what is the meaning and extent of that grant ? what, under our constitution, is the meaning of “pardon” ? To answer the question correctly, we must carry ourselves back to the time of the adoption of the first constitution, and ascertain what was the almost cotemporaneous exposition of both legislative and judicial departments of government.
That it did not, in the opinion of the legislative department of the government—consisting, doubtless, of many of the men who framed the constitution—include the powers of conditional or commutative pardon, is plainly to be inferred from the fact that as early as October 1785, an act of Assembly was passed conferring, for a limited period only, that power on the governor of the State in a certain class of cases. The first section of the act is as follows :
“1. Be it enacted by the general assembly, That it shall be lawful for the governor, and he is hereby (not by the constitution), empowered, with the advice of the council of State, to pardon or reprieve any person or persons adjudged or sentenced to suffer death for a felonious offence, upon such condition of bodily labor to be performed by each person so pardoned or reprieved, as to the governor with the advice of the council shall seem proper : provided, always, that no conditional pardon shall be granted by the governor for murder or treason.”
And the third section provided, that the act should remain in force until the last day of December 1786, and no longer.
Here we have within a few years after the adoption of the constitution (and doubtless by many of those who *806 framed it), a legislative construction of the constitutional graQt of the pardoning power. The Legislature of 1785 clearly thought that the power of conditional commutative pardon as exercised in England, did not belong to the governor under the provisions of the constitution, or they would not have been guilty of the useless and nugatory act of solemnly conferring the power, and for a limited time only. By formally conferring the power they show that, in their opinion, it did not already exist. By limiting it to one year, they show that they did not intend that it should be longer exercised.
It so happens that in the very same year we have a judicial interpretation of the grant of the pardoning power under the constitution of Virginia, by the Supreme Court of Appeals. In 1785, but prior to the passage of the act of assembly aforesaid, the governer of the State-granted to one Fowler, who had been “ attainted of felony,” a conditional pardon, clearly within the pardoning phwer of the King of England; but Fowler broke the condition of his pardon, and the attorney-general moved in the General court for execution on the indictment. Fowler pleaded the pardon as an absolute discharge ; and the attorney-general replied that the pardon was on condition, and that the condition had been broken ; and the question before the court was whether the condition was binding in law—in other words, whether the governor had the power of conditional pardon. The question was adjourned to the Supreme. Court of Appeals for novelty and difficulty.
The only argument urged by the prisoner’s counsel was “that the pardon was absolute and the condition void, as the executive had no power to pardon upon condition.. That the constitution provided for pardons simply.”
The court held that the condition was illegal aud the-pardon absolute. Commonwealth v. Fowler, 4 Call, 35 ; and Mr. Daniel Call, the learned and able reporter, gives the following sylabus as the substance of the decision '
*807 “ The governor cannot pardon on condition ; for the condition is illegal and the pardon is absolute.”
Here, then, in the same year in which the Legislature found it necessary to confer the power, we find the Supreme [court declaring that it did not previously exist— thus showing a perfect concurrence between the legislative and judicial departments of the government very soon after the adoption of the constitution. But it is said that such is not the legitimate effect of the decision in Fowler's case—that the judgment was based on the peculiar character of the condition—on its illegality in itself, and not on the absence of power in the executive.
The condition would have been plainly legal in England ; and was, in fact, just such condition as was allowed by the act of 1785, which was in force at the date of the decision, although not in force at the date of the pardon. But no such argument was addressed to the court, nor any such reason assigned in the judgment; and with the greatest respect for the opinions of my learned brethren, I must be allowed to say that I think the construction thus giveu by them is rather a strained construction of the decision of the court. The only argument for the prisoner addressed to the court, was that the power granted by the constitution to the governor was simply to pardon ; that he had no power to pardon on condition; and therefore the condition was void and the pardon absolute. This was the only argument; and the court very briefly responded that the condition was illegal, and the pardon absolute.
What did the court mean ? Evidently, I think, what had been contended for at the bar, and what Mr. Call, the learned and able reporter, who heard the case, said they meant, viz : that “ the governor cannot pardon on condition ; for the condition is illegal and the pardon is absolute.” That, as we have seen, was the ground on which the prisoner’s counsel rested his case, and that is what Mr. Call, on his responsibility as a reporter, said *808 the court decided ; and I do not think it would be altogether just to the court, to search for other grounds for the decision, neither presented in the argument norsuggested by the court. The meaning of the decision does n°t, to my mind, appear doubtful; but if it were, the sylabus of the learned reporter should, in my opinion, settle that doubt. On a question of such importance it would be neither just nor reasonable to suppose that the highest judicial tribunal in the State would base its decision on a ground not suggested in argument nor disclosed in the judgment; and thus leave the learned reporter and the community in error as to its real decision.
I think that the court intended to decide, and did in fact decide, exactly what Mr. Call reports it as deciding, viz: “The governor cannot pardon on condition; for the condition is illegal, and the pardon is absolute.”
The act of 1785 expired by its own limitation at the end of the year 1786, and was not re-enacted; but in the year 1800 another act of Assembly was passed, authorizing the governor, in substance, to commute the punishment of slaves sentenced to death, to sale and transportation for life. Here again, is unequivocal proof that in the opinion of the Legislature, the power of conditional or commutative pardon did not reside in the governor. See § 39, of ch. 111, Rev. Co. 1819, vol. 1, p. 430.
This law i’emained on our statute in substance, as long as the institution of slavery existed. See Code 1860, ch. 17, § 20, p. 121.
Ho other act, having any important bearing on the question before us, was passed until the 28tb of February 1826, when the governor was authorized in cases of judgments for contempt to “pardon the offence and remit the punishment, whether corporal or pecuniary, either wholly or in part.” Sess. Acts 1825-’6, ch. 18. p. 20.
Such seems to have been the state of legislation and *809 judicial decision on this subject when the amended constitution of 1829-30 was adopted. Down to that time, as I think I have shown, both the legislative and judicial departments concurred in opinion, that the constitutional grant to the governor of “the power of granting ¡reprieves or pardons,” did not authorize “conditional or commutative pardon.”
The constitution of 1829-’30 conferred on the governor identically the same powers, and almost in the same words, with that of 1776. By the former, as we have seen, it is provided that the governor shall have “the power of granting reprieves or pardons,” with certain exceptions ; by the latter, power is given him “to grant reprieves and pardons,” with the same exceptions.
The extent and effect of this grant of power had already, as we have seen, received legislative and judicial interpretation ; and when under such circumstances, the grant is renewed in the same terms, it is unnecessary to cite authority to show, that the power must be regarded to be granted as explained and construed.
Accordingly we find, that in June 1837, the General court of Virginia, then the supreme criminal tribunal of the State, and composed of some of the most learned and able judges who ever sat on the bench of Virginia, were unanimously of the opinion, that in Virginia the power of conditional or commutative pardon did not exist. Ball’s Case, 8 Leigh, 726, 730-31.
It had been argued in that case that a new trial on a question of fact should not be granted, because, among other reasons, redress could be obtained by an appeal to executive clemency; and in answer to the argument, Judge JFry, delivering the unanimous judgment of the court, said:
“Besides the injury to the accused in denying a new trial, and giving resort to the pardoning power only, justice might often be defeated by it. The pardoning power in this State is, in its nature or practice, more *810 limited than that of the King of England. Commutative or conditional pardons are often granted there, by means of which a party may undergo a punishment more suitable to his crime, though less than that to which the judgment of the court consigned him. But with us pardons are, constitutionally or from practice, unconditional and absolute. A new trial might often redress an injury without wholly discharging from punishment—but a pardon would discharge altogether. A person indicted for murder.might be convicte'd of murder in the first degree. It might be clear that this was not right, but that the ojfence was murder in the second degree or manslaughter. If the court could not grant a new trial, the executive must pardon and discharge the prisoner.” There was no dissent from these views; and the other judges were Daniel, Field, Lomax, Scott, Leigh, Estill, Brown, Clopton, Allen, afterwards president of this court, Mason and ííicholaé—“nominee, clara et venerabilia.”
The pardoning power, it is true, was not directly in issue in the cause ; but the expression of an opinion as to its extent and effect was in some sort a necessity to meet the argument urged by the attorney general, that-a new trial should not be allowed, because redress could he had by an appeal to the pardoning power—the mind of the court was called, therefore, directly to the point, and the views presented were doubtless well aud carefully considered. An opinion thus expressed is entitled, in my opinion, to all the weight and force of a judicial decision.
In this state of the law, the revisors in 1847 recommended to the committee on revision, aud the committee reported to the Legislature for adoption, ^the following provision :
“In any case wherein the governor has power to grant a pardon, instead of granting the same unconditionally, he may, after sentence, upon the petition of *811 the person sentenced, grant him a pardon upon such ,t . , , 7 , .7 conditions as may be deemed proper by the governoi, and be assented to by the petitioner; and for the purpose of carrying into effect such conditional pardon, he may issue his order or warrant, directed to any proper officer, which shall be obeyed and executed instead of the sentence that was originally awarded. Especially it shall be .the duty of the superintendent of the penitentiary to receive and confine therein, according to such order or warrant, any person convicted of any crime punishable with death, who shall be pardoned on condition of being confined in the penitentiary.” But the Legislature refused to adopt it: thus declining to confer on the governor the power of conditional pardon.
In 1851 a new constitution was adopted, by which, in addition to the power “ to grant reprieves and pardons after conviction,” the power “to commute capital punishment was, for the first time, given by the State constitution to the governor. The fact that this power of commutation in cases of capital punishment was thus expressly added to the power of pardon, clearly shows that the framers of the constitution concurred in opinion with the Legislature and judiciary, that it was not included in the power of pardon; and the fact that they confined it to cases of capital punishment, as clearly shows that the framers of the constitution did not intend to extend it further. The implication is almost irresistible that commutation, in other than capital cases, is forbidden by the constitution of 1851. “Expressio unius, alterius exclusion The present constitution is to the same effect precisely, except that it does not, as all our previous constitutions did, place the pardoning power under the control of the Legislature.
Such is a brief history—perhaps an imperfect one— of the law on this subject in Virginia ; and the question is, not whether a monarch of Great Britain, in the exercise of a high prerogative, may not dispense clemency *812 at liis own will and on his own terms—pardon absolutely, or impose such conditions of pardon as to him ■ may seem right; but whether, under the constitution and laws of Virginia, understood as they seem to have been by her Legislatures, and expounded as they have been by her courts, a governor of Virginia has the unlimited power of pardon exercised by the crown of Great Britain. My opinion is that he has not. I concur fully with the Supreme Court of Appeals in Fowler's case, and with the General court in Balls' case, that the power of conditional or commutative pardon does not, under our constitution and laws, belong to the governor of Virginia, except, of course, in cases of capital punishment; to which, by the present constitution, it has been expressly extended.
The case before us is not, in my opinion, a case of conditional pardon. A conditional pardon always contains a condition which a prisoner may accept or reject at his pleasure. In this case there is no such condition, or any thing like it; nor is there a word in the warrant about a pardon of the offence. There is neither pardon nor condition referred to in it. It is simply a mandatory commutation of a sentence of imprisonment in the penitentiary to imprisonment in the city jail of Richmond ; and no acceptance or consent is required of the prisoner. It is, in my opinion, plainly the exercise of the power of commutation merely ; and the case not being one of capital punishment, that power has not only not been allowed by the constitution, but by the strongest implication excluded. It does not come then within the ruling in Foioler's ease, where there was a valid pardon but a void condition, leaving the pardon absolute. Here there is no pardon and no condition ; but simply an unauthorized commutation. The entire act of the governor is, therefore, in my opinion, illegal and void ; and the prisoner, instead of being discharged by the Corporation court, should have been remanded to *813 the custody of the sergeant of the city of Richmond, to be conveyed to the penitentiary, in obedience to the judgment of the Hustings court.
Moncure, P. and Anderson, J. concurred in the opinion of Staples, J.
Judgment reversed.