RICH v. CHAMBERLAIN.

1. FEMALE PRISONERS—COMMUTATION OF SENTENCE—TRANSFER TO HOUSE OF CORRECTION—AUTHORITY OF GOVERNOR.

Under 2 How. Stat. § 9865, providing that, whenever the sentence of any female confined in the State prison shall be, by the governor or other competent authority, "commuted to confinement for any period in the Detroit House of Correction," the agent of the prison shall at once transmit such person to the superintendent of said house of correction, who shall keep her therein until the expiration of her sentence "as commuted," the governor has power to order that a woman sentenced to imprisonment in the State prison for life be transferred to the house of correction, without shortening the term of imprisonment.

2. SENTENCE OF IMPRISONMENT—TRANSFER OF CONVICTS.

A sentence to imprisonment in a penal institution is subject to the provisions of law then in force for the transfer of convicts from one prison to another.

3 CONTRACT FOR MAINTENANCE OF PRISONERS—REPEAL OF STAT-
UTE—EFFECT.

    A valid contract made by the board of inspectors of the State
    prison for the keeping of female prisoners in the Detroit House
    of Correction was not abrogated by Act No. 118, Pub. Acts
    1893, which, while superseding all prior acts relating to the
    management of the penal institutions of the State, expressly
    saved all existing rights and liabilities.

*Mandamus* by John T. Rich, Governor of the State of
Michigan, to compel William Chamberlain, Warden of
the State Prison at Jackson, to transfer a female convict
to the Detroit House of Correction. Submitted Decem-
ber 3, 1895. Granted December 10, 1895.

*Fred A. Maynard,* Attorney General, for relator.

*J. H. Cole,* for respondent.

GRANT, J. One Nellie W. Pope was convicted of the
crime of murder in the first degree, and sentenced to the
State prison for life. November 14th last, the relator com-
muted her sentence to imprisonment in the Detroit House
of Correction for life, acting under the authority con-
ferred upon him by section 9865, 2 How. Stat. This is a
friendly proceeding to obtain a construction of that stat-
ute, which reads as follows:

"Whenever the sentence of any female now confined or
that shall hereafter be confined in the State prison shall
be, by the Governor or other competent authority, com-
muted to confinement for any period in the Detroit
House of Correction, it shall be the duty of the agent of
said State prison to at once transmit such person in
proper and safe custody to the superintendent of said
house of correction, whose duty it shall be to receive and
safely keep her in said house of correction until the expi-
ration of her sentence as commuted, or until she is other-
wise discharged by due process of law or competent
authority."

It is conceded that the legislature may provide for the
transfer of a female prisoner from life imprisonment in

the State prison to life confinement in the Detroit House of Correction, and may call this a commutation of her sentence; but the respondent insists that the above statute does not so provide. It would follow, from such construction, that the Governor has no power to commute the sentence of a female prisoner to that institution, even though he lessened the term of imprisonment. To commute is defined: "To exchange one penalty or punishment for another, less severe." Webst. Dict. "The change of a punishment to which a person has been condemned into a less severe one." Bouv. Law Dict.; 3 Am. & Eng. Enc. Law, 365. "The substitution of a less for a greater penalty or punishment." And. Law Dict. The above statute was enacted in 1879, and has ever since been acted upon as conferring the authority upon the Governor. Its evident purpose was to provide for the transfer of female prisoners from the State prison to the Detroit House of Correction. The Constitution clothes the governor with the power to commute. The legislature has seen fit to call this a commutation, possibly due to the popular idea that incarceration in a house of correction is less severe and odious than incarceration in a State prison. We, however, have no concern in the motive which prompted the law. The power to transfer is conceded, and, as well, the power of the legislature to declare such transfer to be a commutation. It is true that the court, in sentencing Mrs. Pope, had no power to sentence her to any other place than the State prison at Jackson; but this sentence was subject to the conditions imposed by law at the time of the sentence, among which was the power in the Governor to commute the sentence to imprisonment in the Detroit House of Correction. *Rich* v. *Chamberlain,* 104 Mich. 436.

The old board of the State prison at Jackson was abolished by Act No. 140 of the Public Acts of 1891. We held that Act No. 118, Pub. Acts 1893, superseded all the acts previously in force covering the entire management,

control, and discipline of all the penal institutions of the State. *Attorney General* v. *Parsell*, 100. Mich. 170. That act expressly saved all rights and liabilities existing, acquired, or incurred at the time it took effect. A contract had been made by the board of inspectors of the State prison for the keeping of female prisoners in the Detroit House of Correction. That contract is still in force, and will continue to be until abrogated by the proper authorities.

The writ must issue, but without costs.

The other Justices concurred.