## CHAPMAN v. SCOTT, Warden.

(District Court, D. Connecticut. December 14, 1925.)

No. 2997.

1. **Criminal law ⟨⟩105—Failure to challenge jurisdiction of person on appearance is equivalent to consent.**

Competency of court to adjudicate subject-matter may always be questioned, but failure to challenge jurisdiction of person on appearance is equivalent to consent.

2. **Criminal law 99—Courts of criminal jurisdiction need not inquire how prisoner came within reach of their mandates.**

Courts of criminal jurisdiction need not inquire how prisoner came within reach of their mandates, but for jurisdictional purposes it is sufficient that he is there.

3. **Prisons ⟨⟩13—Attorney General may transfer convict from federal to state prison, without notice to or consent of convict.**

Attorney General need not notify convict or obtain his consent to transfer from federal to state prison, under Rev. St. § 5546 (Comp. St. § 10547), on ground, inter alia, that place of confinement was not sufficient to secure convict.

4. **Prisons ⟨⟩13—District Court may not question administrative act of Attorney General in transferring federal prisoner.**

District Court, except possibly on showing of gross abuse of discretion, may not question purely administrative act of Attorney General in transferring federal prisoner, under Rev. St. § 5546 (Comp. St. § 10547).

5. **Pardon ⟨⟩8—"Commutation" is operative without acceptance by convict; "pardon."**

Every pardon involves a grant, and cannot be imposed against grantee's will, but a commutation is merely a cessation of the exercise of sovereign authority, and does not obliterate guilt nor restore civil rights, and need not be accepted by convict to be operative.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Commute—Commutation; Pardon.]

6. **Pardon ⟨⟩1—Prisons ⟨⟩15—Order of President held "commutation," and not "pardon."**

Order of President, unconditionally "commuting" prisoner's sentence to term already served *held* a "commutation," as distinguished from "pardon," where prisoner had served portion of his term.

7. **Constitutional law ⟨⟩82—Prisons ⟨⟩15—Commutation of federal prisoner's sentence, to enable sentence imposed by state court to to be carried out, held not violative of prisoner's constitutional rights.**

Commutation of federal prisoner's sentence, to permit sentence of death imposed by state court to be carried out, did not deprive prisoner of any constitutional rights; right to imprisonment not being protected by Constitution.

8. **Prisons ⟨⟩13, 15—Prisoner could not object because federal government surrendered custody.**

Prisoner could not object because federal government temporarily surrendered him to state authorities for trial, resulting in death sentence for murder, nor to commutation of his sentence to federal prison to enable state sentence to be carried out.

9. **Prisons ⟨⟩13—That state prison warden changed federal prisoner's number, when surrendered to state authorities for trial, held not to change legal status of prisoner.**

Where federal prisoner was surrendered to state authorities for trial, fact that warden of state prison, after conviction and sentence by state court, changed prisoner's number as federal prisoner to that of state prisoner, *held* not to change prisoner's legal status.

Habeas Corpus. Petition by Gerald Chapman against Henry K. W. Scott, Warden. Petition denied, writ dismissed, and relator remanded to custody of warden.

Frederick J. Groehl, of New York City, Joseph M. Freedman, of Hartford, Conn., Ray M. Wiley, of Springfield, Mass., and Charles W. Murphy, of Danbury, Conn., for relator.

Hugh M. Alcorn, State's Atty., and Reinhart L. Gideon, Asst. State's Atty., both of Hartford, Conn., for respondent.

George H. Cohen, Asst. U. S. Atty., of Hartford, Conn., for the United States as amicus curiæ.

THOMAS, District Judge. On April 4, 1925, the relator was convicted of the crime of murder in the first degree by a jury in the superior court for Hartford county, in the state of Connecticut, and now seeks, by this writ of habeas corpus, to avoid the sentence of death which was imposed by that court in conformity with the local law. The record upon which his prayer for relief is predicated discloses the following pertinent facts:

In August, 1922, Gerald Chapman was convicted of the crime of robbery of mail matter, and of having placed the life of a mail carrier in jeopardy, and on August 23, 1922, was sentenced by the United States District Court for the Southern District of New York to serve a term of 25 years in the federal penitentiary in Atlanta. He was then conveyed to Atlanta and began to serve his sentence on August 25, 1922. He escaped from that penitentiary on March 27, 1923, and was captured the next day. Following his capture he was confined in a hospital in Athens, Ga., from which institution he also escaped on April 4, 1923, and was at large for a period of about a year and nine months. On January 18, 1925, he was recaptured at Muncie, Ind., from which place he was returned to the Atlanta penitentiary, on January 22, 1925. It was while he was at large after his second escape that he committed the crime for which his life became forfeited to the people of the state of Connecticut.

On January 24, 1925, two days after his return to Atlanta, the Attorney General of the United States ordered his transfer from that institution to the Connecticut state prison at Wethersfield, which appears in the following letter.

"Offices of the Attorney General, Washington, D. C.

"48–762–19       January 24, 1925.

"Mr. H. K. W. Scott, Warden Connecticut State Prison, Wethersfield, Connecticut— Sir: By virtue of the power vested in me by law, I have decided to transfer Gerald Chapman from the United States penitentiary, Atlanta, Georgia, to your institution. This letter will be delivered to you by the warden of the Atlanta institution, together with Chapman's original warrant of commitment, properly indorsed to show loss of time, if any, for misconduct on the part of the prisoner, and will be your authority for receiving the prisoner by transfer.

"Yours very truly,
     "Harlan Stone, Attorney General."

The transfer having been effected, a writ of habeas corpus was issued on February 13, 1925, by the superior court for Hartford county, upon the application of Hugh M. Alcorn, state's attorney for Hartford county, to the issuance of which the United States district attorney for the district of Connecticut consented in open court, by which writ the warden of the Connecticut state prison was required to produce Chapman before said court to answer to the indictment which had been found against him by the grand jury on January 20, 1925, which indictment charged that on October 12, 1924, Chapman did feloniously, willfully, deliberately, and premeditatedly kill and murder James Skelley, a police officer of the city of New Britain. Such consent by the United States district attorney had been authorized by the Attorney General of the United States, who is vested with power and discretion in such matters. The following communication shows the authority for the action of the United States district attorney:

"WJD:HSR.          HSR:DJ.

"48–762–24.

"Department of Justice, Washington, D. C.
      "February 9, 1925.

"John Buckley, Esq., United States Attorney, Hartford, Conn.—Sir: The department is advised that State's Attorney Hugh M. Alcorn will make an application to his court for a writ of habeas corpus requiring the production of Gerald Chapman, now a federal prisoner in the state prison, in order that said Chapman may be placed upon trial under indictment charging him with murder. You are authorized to consent to

the issuance of such writ. Of course all the expense involved in such habeas corpus proceedings and the removal and care of Chapman should be borne by the state authorities.

"Respectfully, for the Attorney General,
"William J. Donovan,
"Assistant Attorney General."

While the record shows that, when the relator was transferred from the federal penitentiary in Atlanta to the Connecticut state prison in Wethersfield, he was not informed of the purpose of the transfer, it nowhere appears that any objection was made by the petitioner or by his counsel to the issuance of the writ of habeas corpus in the state court or to the production of Chapman in said superior court to answer to the indictment charging murder in the first degree, nor was any objection or protest entered or filed to the jurisdiction of the state court over and of the body and person of the relator, or to the jurisdiction of the state court to hear and determine the issues raised by the indictment and the plea of not guilty which was entered on February 13, 1925.

The relator was tried upon the issues raised by the indictment and his plea of not guilty, and on April 4, 1925, the jury rendered a verdict of guilty of murder in the first degree, following which the court rendered judgment accordingly and sentenced the relator to be hanged on June 25, 1925. Thereupon Chapman appealed to the Supreme Court of Errors of the state of Connecticut, and the conviction and sentence were there affirmed, in an able and exhaustive opinion written by the learned Chief Justice, in which opinion all of the justices concurred. In this opinion (103 Conn. 453, 130 A. 899), which was filed on November 5, 1925, it is interesting to note that Chief Justice Wheeler observed that "seldom is a charge of this character so completely and conclusively proven." By successive reprieves by the Governor of the state of Connecticut, the date of execution has now been deferred to March 3, 1926.

On November 23, 1925, the President of the United States executed and issued the following document:

"Calvin Coolidge, President of the United States of America.

"To All to Whom These Presents Shall Come—Greeting:

"Whereas, Gerald Chapman was convicted in the United States District Court for the Southern District of New York of rob-

bery of mail matter and placing the life of the mail carrier in jeopardy, and was sentenced August twenty-third, 1922, to imprisonment for twenty-five years in the United States penitentiary at Atlanta, Georgia; and

"Whereas, the said Gerald Chapman began his sentence in the Atlanta penitentiary on August twenty-fifth, 1922, and escaped therefrom March twenty-seventh, 1923, was recaptured March twenty-eighth, 1923, and escaped from the Athens (Georgia) Hospital on April fourth, 1923, and was recaptured and returned to the Atlanta penitentiary January twenty-second, 1925; and

"Whereas, the said Gerald Chapman was transferred to the Connecticut state prison at Wethersfield, Connecticut, by an order dated January twenty-fourth, 1925, duly signed by the Attorney General; and

"Whereas, it has been made to appear to me that the ends of justice will be served by a commutation of the sentence in this case:

"Now, therefore, be it known that I, Calvin Coolidge, President of the United States of America, in consideration of the premises, divers other good and sufficient reasons me thereunto moving, do hereby commute the sentence of the said Gerald Chapman to the term of imprisonment already served.

"In testimony whereof I have hereunto signed my name and caused the seal of the Department of Justice to be affixed.

"Done in the District of Columbia this twenty-third day of November, in the year of our Lord one thousand nine hundred and twenty-five, and of the independence of the United States the one hundred and fiftieth.

"[Seal of the Department of Justice.]
"Calvin Coolidge.

"By the President:
"Jno. G. Sargeant, Attorney General."

The executive order above recited was offered to the relator in his cell in the Connecticut state prison by the warden, but the relator absolutely refused to accept the document or the commutation of his federal sentence.

The outline of facts above set forth comprehends all of the relevant and material facts. I now come to a consideration of the legal propositions sought to be educed therefrom. These propositions do not appear in any sequential order, nor are they all expressed with definitive adequacy. Nevertheless an attempt will be made to arrange them in some logical order.

[1-3] To begin with, the jurisdiction of the state court to try the relator is now and for

the first time challenged. It is contended that Chapman was not properly before the superior court of Connecticut, that he was a federal prisoner, and that his removal from Atlanta to the jurisdiction of Connecticut was without warrant in law. To these contentions several answers suggest themselves. There was no plea to the jurisdiction of the state court filed at any time, and while the competency of any. court to adjudicate the subject-matter may always be questioned, jurisdiction of the person, if not challenged upon appearance, is equivalent to consent. But, even if this were not so, I am unable to find any basis for the contention that, because Chapman did not consent to his removal from Atlanta, he therefore was in a position to contest the jurisdiction of the state of Connecticut, once he was physically present within the boundaries of the state. Courts of criminal jurisdiction need not inquire how the prisoner at the bar came within the reach of their mandates; for jurisdictional purposes it is sufficient that he is there. It happens, moreover, that the relator was legally and properly brought into the state of Connecticut. Section 10547 of the Compiled Statutes (Revised Statutes, § 5546), confers authority upon the Attorney General to change the place of imprisonment of a federal prisoner for several reasons, and, inter alia, when, in his opinion, the place of confinement is not sufficient to secure the custody of the prisoner, and if, under the condition set forth in the statute, the Attorney General acts, and orders the transfer of the prisoner, the latter's consent or notice to him is unnecessary. U. S. v. Lane (D. C.) 221 F. 299.

[4] The record shows that Chapman had escaped from Atlanta, and, if the Attorney General thought that place insecure, he apparently had good ground for his conclusion. In any event, this court, except possibly upon a showing of gross abuse of discretion, may not question the purely administrative act of the Attorney General.

The proposition is next advanced that the relator, being a federal prisoner, may not be sequestered to the justice of Connecticut. To this the state's attorney, in behalf of the respondent, replies by procuring the order issued by the President of the United States, which the state's attorney insists is a commutation pure and simple, but which the relator says is a pardon, or conditional pardon, which he refused to accept. In order to endow that repudiation with a virile efficacy, the relator appeals to the settled principle of law that a pardon is not con-

summated and effective until it is accepted by the convict, and so insists that the document is not a commutation of sentence, but a pardon, and in support of this claim relies upon the doctrine of U. S. v. Wilson, 7 Pet. 150, where Chief Justice Marshall, on page 161 (8 L. Ed. 640), said:

"A pardon is a deed, to the validity of which delivery is essential, and delivery is not complete without acceptance. It may then be rejected by the person to whom it is tendered; and, if it be rejected, we have discovered no power in a court to force it on him."

[5] It is urged that the exercise of the power of commutation is but the exercise of the pardoning prerogative in a lesser degree, and that, if the gift of a pardon is incomplete without acceptance, the lesser grant is surely so. We may acknowledge the premise without acceding to the conclusion, because the fact is that a distinction does exist between a pardon and a commutation, and the legal principles applicable are no longer open to question. The rule of law is well settled that a commutation does not need acceptance by the convict in order to be operative. The general principles here applicable are well stated in 20 R. C. L. at page 530, in the following language:

"A commutation is the substitution of a less for a greater punishment, by authority of law, and may be imposed upon the convict without his acceptance, and against his consent. In this respect it differs from a pardon to the validity of which acceptance is essential. The power to commute sentence is a part of the pardoning power, and may be exercised under a general grant of that power. The general power necessarily contains in it the lesser power of remission or commutation. If the whole offense may be pardoned, a fortiori, a part of the punishment may be remitted or the sentence commuted."

In Lee v. Murphy, 22 Grat. 789, 12 Am. Rep. 563, the Supreme Court of Appeals of Virginia held that the Governor had the constitutional authority, with the consent of the prisoner, to give him a conditional pardon, and that the prisoner could be lawfully held to the performance of the condition. The distinction between a conditional pardon and a mere commutation was pointed out by Judge Staples. On page 798 he said:

"It is to be borne in mind that there is a material distinction between a conditional pardon and a mere commutation of punishment. A conditional pardon is a grant, to the validity of which acceptance is essential. It may be rejected by the convict; and, if

rejected, there is no power to force it upon him. A commutation is the substitution of a less for a greater punishment, by authority of law, and may be imposed upon the convict without his acceptance, and against his consent."

In the Matter of C. H. Charles and Louis Howard, Petitioners, 115 Kan. 323, 222 P. 606, the Supreme Court of Kansas went further into the distinction between conditional pardon and commutation, and on page 327 (222 P. 608) Judge Burch said:

"Although power to commute is logically derivable from power to pardon, on the principle that the greater includes the less, commutation is essentially different from pardon. Pardon exempts from punishment, bears no relation to term of punishment, and must be accepted, or it is nugatory. Commutation merely substitutes lighter for heavier punishment. Rich v. Chamberlain, 107 Mich. 381, 383 [65 N. W. 235]. It removes no stain, restores no civil privilege, and may be effected without the consent and against the will of the prisoner. In the Matter of Sarah M. Victor, 31 Ohio St. 206; 20 R. C. L. 530."

In People ex rel. Patrick v. Frost, Warden, 133 App. Div. 179, 117 N. Y. S. 524, Judge Jenks, speaking for the Appellate Division, Second Department, said on page 528 (133 App. Div. 183):

"The relator argued that he had never accepted the commutation; but he concedes in his printed points that commutation does not require his acceptance. Such I think is the law. Lee v. Murphy, supra. In this a commutation differs from a pardon, either absolute or conditional. A pardon is an act of grace to the exemption of punishment, and it is regarded as a deed, which must be accepted by the convict to be valid. United States v. Wilson, 7 Pet. 150, 8 L. Ed. 640. It does not proceed upon the theory of innocence, but implies guilt. Roberts v. State, 160 N. Y. 217, 54 N. E. 678. 'It gives to him (the convict) a new credit and capacity, and rehabilitates him to that extent in his former position.' Knote v. United States, 95 U. S. 149, 153, 24 L. Ed. 442. But a commutation relates only to the punishment. It is said in Ex parte Collins, 94 Mo. 25, 6 S. W. 346: 'The commutation does not annul the sentence of the court, but is, pro tanto, an affirmance of it, with a modification.' See, too, Re Discharge, 73 Vt. 414, 51 A. 10, 56 L. R. A. 662."

In State ex rel. Murphy v. Wolfer, 127 Minn. 102, 148 N. W. 896, L. R. A. 1915B, 95, the Supreme Court of Minnesota said:

"It is well settled that a commutation of a sentence is a substitution of a less for a greater punishment. After commutation the commuted sentence is the only one in existence, and the only one to be considered. After commutation, the sentence has the same legal effect, and the status of the prisoner is the same, as though the sentence had originally been for the commuted term. Johnson v. State [10 Ala. App. 667] 63 So. 163; In re Hall, 34 Neb. 206, 209, 51 N. W. 750, 5 Op. of Attys. Gen. (U. S.) 370; Lee v. Murphy, 22 Grat. (Va.) 789, 799, 12 Am. Rep. 563; In the Matter of Sarah M. Victor, 31 Ohio St. 206, 208."

If it were conceded by the relator that the order issued by the President on November 23, 1925, quoted supra, is a commutation, further discussion would be unnecessary. Not only is it not conceded that the document is a commutation, but it is asserted that it is a pardon, and, as the relator did not accept it, the document is nugatory.

There is, so far as I am able to find, no federal case in point, but I feel myself impelled to adopt the rule evolved in various state jurisdictions, and all the more so as the rule commends itself to me as one founded in practical reason. The rule that a pardon requires acceptance is, after all, nothing more than an application of the old principle that a gift must be accepted in order to be effective. Every pardon involves a grant, and a grant is something which cannot be imposed against the will of the grantee. A commutation, on the other hand, is merely a withdrawal of a restraining jurisdiction, a cessation of the exercise of the confining power and authority of the sovereign, and it is not within the ability of the prisoner to compel the sovereign to continue that restraint. He may refuse to accept a gift from the state, but the state does not need his acquiescence to terminate its right to his servitude.

[6] As already stated, it is urged, and strenuously, that the commutation issued by the President is one in name only—that in substance and in law it is a pardon. The relator urges that support for this contention is found in the fact that the commutation, by its terms, became immediately effective, and provided no substitution of a less penalty for the one originally imposed. I can find no real merit in the contention. A pardon would be something essentially different from a commutation, even if the commutation were issued immediately upon sentence, to become immediately effective. A commutation thus granted would not obliterate the

stain of guilt; nor would it restore the prisoner to his civil rights. However, in the instant case, the commutation has in fact substituted a lesser penalty for the one originally imposed. Chapman has already served a certain amount of his time on the original 25-year sentence of the court, and the commutation substitutes that term for the term which the United States District Court for the Southern District of New York imposed, and there is no condition attached to his release. The contention that the relator is a federal prisoner is therefore untenable, nor could this court reach a conclusion different from the one to be announced, even if that contention proved a valid one.

[7] The claim that the choice of the jurisdiction to which Chapman is amenable is one which lies with the relator is not only novel, but without merit. There is considerable reiteration in the brief filed by counsel for the relator of the charge that he is being deprived of his constitutional rights. Just what these "constitutional rights" are is not made to clearly appear. To speak of a "right" to be imprisoned is to invest that word with a significance not to be found in common parlance nor in legal definition. If there is such a thing as a "right" to incarceration, it is certain that it is not one of the rights guaranteed by the Fourteenth Amendment of the Constitution of the United States, nor by any other provision of that document. The whole conception involves a peculiar inversion of accepted ideas. The relator did not become invested with a tenancy for years of a cell in the Atlanta penitentiary by the commission of a felony and the sentence of the federal court following his conviction of that felony. In the absence of the commutation, and in case the United States were here demanding its right to compel the relator to serve the balance of the unexpired term of 25 years, it might well be that the federal government could decline comity and refuse to permit the judgment of the state court to be carried out until after the federal sentence had expired.

[8] But the relator is not the federal government, nor is he authorized to move on its behalf, nor will the court be keen to discover a technique for the subversion of justice; it will not interpose its arm to circumvent a lawful doom. It is a fundamental rule that our system of state and federal jurisdiction requires a spirit of reciprocal comity between courts to promote due and orderly procedure, and the facts disclosed by this record and clearly established show conclusively that the spirit of reciprocal comity has been fully met in this instance, and that due and orderly procedure has resulted. We must not overlook the fact that to all the proceedings had in the state court, resulting in the relator's conviction of murder in the first degree, the United States, through its duly authorized agents and representatives, acquiesced in those proceedings, and temporarily surrendered its possession of the relator to the state authorities, and, having done this, the relator can have no legal complaint, as the situation is squarely within the rule stated by Chief Justice Taft in Ponzi v. Fessenden, 258 U. S. 254, 42 S. Ct. 309, 66 L. Ed. 607, 22 A. L. R. 879. On page 261 (42 S. Ct. 311) he said:

"In the case at bar the federal District Court first took custody of Ponzi. He pleaded guilty, was sentenced to imprisonment, and was detained under United States authority to suffer the punishment imposed. Until the end of his term and his discharge, no state court could assume control of his body without the consent of the United States."

In the case at bar the United States consented that the state of Connecticut should assume control of the body of the relator. When the commutation was issued by the President, all interest that the United States had in the relator ended, and he became subject only to the laws of the state of Connecticut.

[9] Much has been made of the fact that the warden of the state prison, on his own initiative and without direction from any one, changed the relator's number as a federal prisoner to that of a state prisoner, after his conviction and sentence to death by the state court. But I see nothing in this act of the warden to change the relator's legal status, or to bring him outside of the legal principles here applicable.

It further appears that the United States, by George H. Cohen, its Assistant United States Attorney, acting by and under the authority of the Attorney General of the United States, joins in asking this court to dismiss this writ, and files an answer to the relator's petition, in which it says, inter alia, that it has no interest in or claim to or upon the person or custody of the relator, and that he is no longer being held by the respondent as a prisoner of the United States, and that the respondent is not an agent of the United States.

In view of this record, and the settled legal principles applicable to it, the relator's

10 F.(2d)—11

petition is denied, and the writ of habeas corpus is dismissed, and the relator is remanded to the custody of the respondent.